# The Commonwealth *versus* The City of Philadelphia.

The loan created by the guardians of the poor of the city of Philadelphia is a public loan, created by a public corporation for a public purpose, and comes therefore within the general words of the Act of 29th April, 1844, imposing a state tax on public loans and making it the duty of the treasurer to deduct the tax from the interest paid to the loanholders.

It is not clear that a public officer charged with the duty of collecting a tax, can be permitted to deny his power to do so, after having exercised it.

It is the duty of an agent who receives money for the Commonwealth to pay it over, and let the aggrieved party apply to the state for relief.

Where loanholders, from whose interest a state tax was deducted by the treasurer of a public corporation, have acquiesced for eleven years, they are presumed to have yielded their right in favour of the Commonwealth.

THIS was an amicable action of debt in the Court of Nisi Prius at the suit of the Commonwealth against The City of Philadelphia, in which the parties agreed upon the following case stated, in order to have the matter determined by the Supreme Court:—

" ' The guardians for the relief and employment of the poor of the city of Philadelphia, the district of Southwark, and the townships of Northern Liberties and Penn,' was a body politic and corporate, created by an Act of the General Assembly, approved March 5, 1828; the corporate body was composed of twelve persons, who were annually chosen in respective numbers by the corporate authorities of the city of Philadelphia, the districts of the Northern Liberties, Southwark, Spring Garden, Penn, and Kensington; and subsequently the authorities of the district of Moyamensing were authorized to elect to the corporate body.  This corporation was charged with the care and employment of the poor of the city and districts named, which were all within, and embraced nearly the whole of the territorial limits of the county of Philadelphia.  Several of the rural districts in the county were authorized to provide for their own poor, and formed no part of the said corporation.

" This corporation had conferred upon them the power to assess and collect taxes, and from time to time was authorized to borrow money for the purposes incident to their organization, and incurred debts amounting to upwards of $600,000, upon which interest was paid semi-annually by their treasurer.  This officer was a member of the corporation, and his appointment was provided for by the act constituting the corporation.

" By an Act of the General Assembly, approved April 29, 1844, entitled ' An Act to reduce the state debt, and to incorporate the Pennsylvania Canal and Railroad Company,' all public loans or stocks whatsoever, except those issued by the Commonwealth, were

[Commonwealth *v.* City of Philadelphia.]

made liable to the payment of a tax of three mills on every dollar of the value thereof.   By the 42d section of this Act, it was provided as follows : ' And it shall be the duty of the treasurer of each county, incorporated city, district, and borough of this Commonwealth, on the payment of any dividend or interest to any holder or agent claiming the same, on any scrip, bond, or certificate of indebtedness issued by the said incorporated city, district, or borough aforesaid, to assess the tax herein made and provided for state purposes, upon the nominal value of each and every said evidence of debt, said tax to be deducted by the said treasurer, on the payment of any interest or dividend aforesaid, and the same shall be held by him, until paid over to the state treasurer.' "

" The treasurer of the said corporation, at the times of the payment of the interest to the holders of the loan of said corporation, deducted therefrom the amount of said tax.   The loanholders protested against the deduction of the said tax, and the same was retained by the treasurer, and not paid over to the state treasurer, until such time as the legal rights of the parties and the Commonwealth in the premises should be determined.   The said loan was not at any time assessed nor returned for assessment by the several holders thereof, nor was any state tax thereon at any time assessed, levied, or collected in any manner.

" By a further Act of Assembly, approved February 2, 1854, commonly called the Consolidation Act, the aforesaid corporation of the guardians of the poor was abolished, and all their estate vested in the corporation of the city of Philadelphia, created by that act.   Among the estate of the said corporation of the guardians of the poor, which passed to the city of Philadelphia by force of the said act, was the reserved fund before mentioned, which the latter corporation holds for the use of those entitled thereto.

" If the court shall be of opinion that the loan before mentioned was liable to the said tax, and to be deducted and retained by the treasurer as aforesaid, then judgment to be entered in favour of the Commonwealth for the sum mentioned in the said schedule ; and if of a contrary opinion, then judgment to be entered in favour of the city of Philadelphia."

The statement annexed showed the receipt of the tax from 1st July, 1845, till 1st July, 1854, both inclusive, amounting to $18,286.38.

*Franklin*, Attorney-General, for Commonwealth.—The 32d section of the Act of 29th April, 1844, subjects all public stocks or loans whatsoever to taxation except those issued by the Commonwealth.   Can it be doubted that the loan of the guardians of the poor was a public stock loan ?   It was a public corporation : Dartmouth College *v.* Woodward, 4 *Wheat.* 629 ; Rundle *v.* The Del-

[Commonwealth v. City of Philadelphia.]

aware and Raritan Canal, 1 *Wall, Jr.* 276. The 42d section of the above recited act directs that the treasurers of the municipal corporations shall assess and retain the tax, when the interest is paid, and pay it over to the state treasurer.

It is contended that these loanholders are not within the act. They are not named in terms; but they come within the intention and spirit of the act as interpreted by this court: Philadelphia Saving Fund v. Yard, 9 *Barr* 359; Spangler v. York County, 1 *Harris* 322; Berks County v. Bertolett, *Id.* 522; Insurance Company v. Yard, 5 *Id.* 331. The loanholders have put a construction upon the act themselves, by neglecting to have it assessed as other property. The expression, a treasurer of a district, may very properly be construed as the treasurer of a public corporation, having authority within distinct district limits: Commonwealth v. Morrison, C. P., Dauphin county, MS.

But, if the assessment and retention were irregular, it has been waived by acquiescence: Allentown v. Saeger, 8 *Harris* 421. In this case the loanholders protested, but did not follow up the protest by bringing suit, and in the mean time omit to return their stock for assessment, as required by the 42d sect. Act 29th April, 1844, and 4th sect. Act 22d April, 1846.

*H. J. Williams,* for the defendant.—In England the care of the poor was not devolved upon the municipal corporations. They were cared for by the parish overseers, appointed by two justices of the peace, and these overseers assessed the poor rates. In Pennsylvania the same distinction has been maintained. No corporation established for municipal purposes has been charged with the support of the poor. The directors or overseers were always distinct in their authorities and jurisdictions from the county and township organizations. The proprietary charter to the city of Philadelphia conferred no authority to levy taxes for the support of the poor.

The Act of 22d February, 1717–18, § 3, provided a system for the counties of Philadelphia, Chester, and Bucks. The respective Quarter Sessions appointed the officers to have the charge of the poor, and regulated the levy of taxes for their support. The regulations for the poor of Philadelphia were different from other portions of the state. Considerable provision was made by private charity. In 1776 the contributors to this fund were incorporated by the name of " Contributors to the relief and employment of the poor in the city of Philadelphia:" a loan was authorized, and the taxes levied for the relief of the poor were paid over to them. In 1779 the legislature appointed certain persons by name as managers of this corporation, the occupation of the city by British troops having rendered an election impossible. And in 1782 enacted that in the event of a failure to elect managers, the over-

[Commonwealth *v.* City of Philadelphia.]

seers of the poor should become a body corporate by the name of "the guardians of the poor in the city of Philadelphia."

In 1803 the system was remodelled by the creation of a corporation called "The Guardians of the Poor of the city of Philadelphia, the district of Southwark, and the township of the Northern Liberties." The estates of the poor corporations were transferred to them, and they were authorized to levy, assess, and collect taxes. This corporation continued until it was merged with other public corporations in the consolidated city in 1854. They were authorized by the Act of 1828 to contract a loan.

Their duties were limited to the reception, maintenance, and employment of the poor. They were an eleemosynary corporation to distribute such sums as were paid over to them by the municipal corporations, or derived from their estates, or the labour of the poor under their charge. The money in suit did not come from the municipalities. The loan was by authority of an Act of Assembly. The guardians made the loan, and the faith of their corporation was pledged for its payment. They stipulated to pay the interest, and without a specific enactment for that purpose they were not justified in paying less.

The authority to tax must be found in an Act of Assembly, and cannot be *implied* by a strained construction : Permanent Bridge *v.* Trustees, 13 *S. & R.* 422 ; Blickensderfer *v.* School Directors, 8 *Harris* 38.

The only source of authority claimed is the Act of 1844. In that it is only " the treasurers of each county, incorporated city, district, and borough of this Commonwealth," that are authorized to retain the tax. Unless, therefore, the guardians come within this category, it cannot be claimed that they were under any obligation to retain the tax. That they do not is clear : Angell & Ames 10 ; 1 *Bl. Com.* 43–4. They had no territorial jurisdiction. Their power is similar to the House of Refuge, or hospital, almshouse, or asylum. Because powers are derived from civil authority it does not follow that they are political ; these are only such as relate to the government of the people ; not such as relate merely to civil rights : Angell & Ames 25. The cases cited from 9 *Barr*, 1 and 5 *Harris*, decide only that certain property is subject to taxation in the usual way. That is not the question here. These loans could not be assessed as the property of the corporation. They were debts, not estates. A mortgagor could not deduct the state tax from the interest due, because it had not been assessed as the property of the mortgagee ; yet in this case a borrower claims that privilege. The Commonwealth *v.* Morrison, decided by Judge PEARSON, only decides that the word county was accidentally omitted in the 42d section of the Act 29th April, 1844, but it was contained in the previous part of the section.

The act makes no distinction as to public corporations and pri-

[Commonwealth *v*. City of Philadelphia.]

vate corporations. If they are not *municipal* corporations, the tax was wrongfully retained: Trustees, &c., *v*. Winston, 5 *Stew. & Por. Ala. Rep.* 17; Bonaparte *v*. Camden and Amboy Railroad Company, *Baldwin* 223.

The suggestion that the loanholders have waived their rights is without foundation; they received the interest paid them under protest, and have done nothing to sanction or ratify the payment. When the state demanded payment they resisted. The money was in the hands of the treasurer as their trustee with full notice of their claim. Time never runs against a trust.

The opinion of the court was delivered by

BLACK, J.—By the Act of 29th April, 1844, the legislature imposed a tax of three mills in the dollar upon all public loans or stocks whatsoever, except those created by the Commonwealth, and provided that it should be assessed by the treasurer of the indebted corporation and deducted from the interest on such loans when the interest should be paid to the holders. The " Guardians of the Poor" had a loan outstanding of $600,000 and upwards. The treasurer of that corporation retained the taxes at each semi-annual payment of interest, from 1845 until 1854. In 1854 the Consolidation Act abolished the corporation called the " Guardians of the Poor," vesting its estate in the city, and requiring the city to perform its functions. Under this latter act the state taxes, deducted by the treasurer of the " Guardians of the Poor" from the interest on the loans of that corporation, were paid over to the city treasurer, who refuses to pay them to the state unless compelled by a judgment of this court. The defence is that the tax upon public loans was not chargeable against a loan created by the " Guardians of the Poor."

It is not by any means clear that a public officer charged with the duty of collecting a tax can be permitted to deny his own power, after having exercised it. Shall he be allowed to assert that a tax is chargeable when he demands it from the citizen, and then say it is not chargeable when the state demands it from him? It seems much more just and reasonable to require that every agent of the Commonwealth who receives money for her in the shape of taxes should pay it over, and let the aggrieved party make his appeal to the state herself. Some of these taxes were received more than eleven years ago. Doubtless the persons who paid them have no expectation that they will be refunded. If the treasurer can keep them from the state on the ground that the law did not authorize him to receive them, he will not be obliged to pay them at all. The city has no right to them; the " Guardians of the Poor" is a body which does not exist; and the loanholders, having acquiesced in their payment for eleven years, are presumed to have yielded their right for ever. But they yielded

[Commonwealth *v.* City of Philadelphia.]

it to the state for the public benefit, not to the treasurer for his private emolument.

Be this however as it may, the case is a clear one on the other point. The loan created by the guardians of the poor *is* a public loan or stock. It is created by a public corporation for a public purpose, and is to be redeemed out of a public fund which is replenished from time to time by a public tax laid on the property of the people. This case therefore comes within the general words of the law of 1844. The omission of any description of such a corporation as this in the details of the law does not authorize us to say that its loans were not intended to be taxed.

> Judgment in favour of the plaintiffs for eighteen thousand two hundred and eighty-six dollars and thirty-eight cents ($18,286.38).