Argued· May 2, decided May 31, 1910.

## UMATILLA WATER USERS' ASSOCIATION *v.* IRVIN.

### [108 Pac. 1016.]

Corporations — Directors — Election — Qualification of Voters — Determination by President—Review.

1. Under Section 5062, B. & C. Comp., providing that the president of a corporation shall act as inspector of elections and certify who are elected directors, the president of a corporation for such purpose is a public officer having authority to determine who are eligible· to vote for directors, and for an erroneous exercise of such power no appeal lies to the meeting at large, but only to the courts.

Corporations — Election of Directors — Qualifications of Stockholders—Unpaid Assessments.

2. Where a corporation, including an association of water users owning land within a government reclamation project, had agreed to collect an assessment levied by the Secretary of the Interior, and the corporation's by-laws also provided for special assessments on property specially benefited, the corporation had power to levy an assessment on its stockholders owning property within the reclamation project equal to an assessment levied by the Secretary of the Interior and payable one year before the assessment levied by the Secretary of the Interior would become delinquent, and stockholders failing to pay such assessment were not entitled to vote for directors under Section 5058, B. & C. Comp., providing that a delinquent stockholder shall not be entitled to vote.

CORPORATIONS—OFFICERS—"DE FACTO OFFICERS"—"DE JURE OFFICERS."
3. Technically speaking, the term *de facto* officer" applies · only to a public officer, and then usually only to an office having a physical existence and property. A *de facto* officer must be one publicly exercising the functions of an office, and actually. in possession of it. The expressions "officer *de facto*" and "officer *de jure*" have in many instances been applied to directors and other managing agents of private corporations, but they do not possess the relation of officers to it, or to the public; their status being rather agents of their principal.

CORPORATIONS—BOARD OF DIRECTORS—DE FACTO BOARD.
4. Where an alleged *de facto* board of directors of a private corporation was not in the actual exercise of its functions, and had not been recognized by the public, or by those having dealings with the corporation as a legitimate board of directors, and had not been performing generally the duties of a board of directors, it was not a *de facto* board, and had no rights.

CORPORATIONS—ELECTION OF DIRECTORS—WITHDRAWAL BY PRESIDENT.
5. Where the president of a corporation acting as inspector of election for directors was violently interfered with in the discharge of his duties, and prevented from issuing a proper certificate of election, and had reason to fear further violence if he attempted to continue to discharge his duties in accordance with his view of the law, he was justified in refusing to proceed or remain in attendance.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit brought by plaintiff to enjoin Irvin and others from acting as directors and officers of the plaintiff corporation.

The complaint among other matters, alleges that H. G. Newport is president, F. A. Yates, secretary, F. B. Swayze, treasurer, A. C. Crawford, vice-president; that Newport, Skinner, Yates, together with Crawford and Sommerer constitute the board of directors of such company; that they were duly chosen at the regular stockholders' meeting held at Hermiston on January 9, 1909; that on the 11th day of January, 1909, the directors above named elected Newport, president, Crawford, vice-president, Yates, secretary, and Swayze, treasurer; that they entered upon the discharge of the duties of their respective offices,. and have ever since and are now in possession and control of the property, funds, and records of the corporation, excepting such as the defendant may

wrongfully have collected and obtained possession of; that at the annual election held by the stockholders on January 9, 1909, H. T. Irvin, president of the corporation, presided as chairman of the meeting until the canvass of votes cast for directors was partially completed. It is further alleged, in substance, that after the votes were cast Irvin, with the assistance of the directors, fraudulently proceeded to canvass the vote, and, with the purpose of depriving a majority of the stockholders of their choice for directors, of declaring himself and C. S. McNaught elected directors, and of obtaining control of the property of the corporation, refused to count or allow to be counted a large number of votes which were cast by duly qualified stockholders; that against the will of a large majority of the stockholders, and against the wish and demand of the remaining members of the canvassing board, he undertook to close such board before all the ballots were counted, and refused to further act as chairman of the meeting, declined to continue the canvass, and left the meeting; that the stockholders and directors thereupon chose a chairman *pro tem.*, continued the meeting, and proceeded to canvass the ballots and declare the result; that thereby Newport, Crawford, Yates, Sommerer, and Skinner were elected directors; that thereafter Irvin, for the purpose of depriving the duly elected directors and officers of the control of the corporation, and hindering them from transacting business with the United States reclamation service, certified that he, McNaught, Sommerer, Crawford, and Newport had been elected directors; that about January 15, 1909, they, with the exception of Newport, held a pretended directors' meeting, and alleged to elect Irvin, president, McNaught, vice-president, Geo. Upthegrove, secretary, and F. B. Swayze, treasurer; that ever since such time the defendants Irvin, McNaught, and Upthegrove have feigned to be president, vice-president, and secretary, respectively, of the plaintiff

company; that the defendants Crawford and Sommerer have attended the pretended directors' meetings, and have aided and assisted them in their fraudulent acts and purposes; that Upthegrove, with Irvin's help, has falsely represented to the land department and the reclamation service that he is plaintiff's secretary; that he is proceeding, and intends, to receive and collect from the stockholders of this corporation large sums of money, due from them to the corporation, for shares of stock and the assessments thereon, and will, if not prevented and restrained by order of this court, collect the same, wrongfully and without authority, to the irreparable injury of plaintiff, take from numerous persons stock subscriptions and applications for water rights, and do other things which can only lawfully be done by the duly elected and qualified secretary of the corporation; that, by reason of these false and fraudulent acts, stockholders and persons wishing to deal with the corporation are hindered, delayed, and their rights jeopardized and rendered doubtful; that plaintiff will be prevented from collecting money due from stockholders and applicants for water rights and hindered from transacting business with the United States officials, and damaged in various other matters.

The answer admits that Crawford, Sommerer, and Newport are directors, and that Swayze is treasurer, and, in effect, denies every other allegation of the complaint, except it admits that defendants are acting as officers and directors, and that they intend so to act, and to collect money and generally transact the business of the corporation. Defendants then allege that on January 9, 1909, defendants Irvin, McNaught, Crawford, Sommerer, and Newport were duly elected directors, and that Irvin, as president, declared them elected, and thereafter duly certified the result; that thereafter, on notice legally given, the defendants Irvin, Crawford, McNaught, and Sommerer met as a board of directors, and elected Swayze

Sig. 14

treasurer, and Upthegrove secretary; that they have been acting as such officers ever since; that they are the duly qualified and acting officers of the corporation; that the officers of the reclamation service, the Secretary of the Interior, and the United States Land Office at La Grande have recognized the defendants as the directors and officers of the corporation and transacted all business with them as such, and refuse to transact business with any other persons; that plaintiff has a plain, speedy, and adequate remedy at law; and that a court of equity has no jurisdiction.                                    AFFIRMED.

For appellant there was a brief over the names of *Mr. F. H. Bartlett* and *Messrs. Fee & Slater* with an oral argument by *Mr. Robert J. Slater*.

For respondents there was a brief over the names of *Mr. R. R. Johnson* and *Messrs. Winter & Lowell* with an oral argument by *Mr. John P. Winter*.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. Plaintiff in this case disclaims any attempt to try the title to the offices claimed by Newport, Yates, and Skinner, which for convenience we shall designate as the "Newport Board" and those claimed by Irvin and McNaught, who, with Crawford and Sommerer, their title being undisputed, we shall designate as the "Irvin Board."

It is contended that the Newport Board, with Yates as secretary, constitutes the *de facto* officers of the corporation, and that this suit is merely to prevent persons claiming title to these offices from interfering with them in the discharge of their duties. We are cited to several cases where persons in the actual, physical possession of an office, like a clerk's or other office of like character, have invoked the aid of equity to avoid being dispossessed. Other cases are cited where persons holding a regular

certificate of election and engaged in the actual performance of the duties of an office have invoked equity to prevent a claimant from ousting them by force pending proceedings by *quo warranto* or otherwise.   But in this case the officers, whose tenure is disputed, are not plaintiffs. No member of the Newport Board is in court for himself, asking that he be protected in his position, as director or other officer.  It is the corporation that asks the aid of equity to protect it from persons who, it claims, are not properly elected, and who are alleged to be interfering with its regular or *de facto* officers in the discharge of their duties.   Both parties admit that the same person is treasurer, and plaintiff does not allege that money collected by the Irvin Board is being appropriated to any improper purpose or to any end different from that to which it might be applied if the Newport Board had collected it.   Barring the confusion of having two alleged boards of directors, each claiming authority to act for the corporation, no injury is shown to have resulted to plaintiff from defendants' claim to be the actual officers of the corporation.

The cause of the peculiar situation in which the plaintiff corporation finds itself arises primarily out of a disputed election of directors held on January 9, 1909.   The plaintiff corporation is an association of landholders within the irrigation district covered by that irrigation project of the United States reclamation service known as the "Umatilla Project," and had entered into a contract with the United States for the collection and payment of all charges against its stockholders made under the federal statutes for work done by the United States in connection with its system of water supply.   Under some regulation of the government, assessments are made against irrigated lands by units, each unit being composed of lands in a particular locality supplied by its irrigation system and presumably organized with reference to the

time when water could be supplied to that locality. The Hermiston unit was the first that the government attempted to supply with water. The reclamation authorities in the year 1908 levied an assessment of $7.00 per acre upon the lands embraced in the Hermiston unit, which assessment, plaintiff alleges, would become enforceable by foreclosure on the property on December 1, 1909. After this assessment had been levied by the Secretary of the Interior, and on November 10, 1908, plaintiff's board of directors levied an assessment of $7.00 per share on the land embraced in the Hermiston unit and declared it due and payable December 1, 1908. At the stockholders' meeting January 9, 1909, the right of the stockholders who had not paid this assessment to vote on the election of officers was challenged, and Irvin, president of the corporation, ruled that such stockholders could not vote and refused to count their ballots. An appeal was taken from this decision, and, by a vote of the meeting it was overruled. Notwithstanding this action of the meeting, the president refused to allow the ballots of such alleged delinquent stockholders to be placed in the ballot box or to be counted, but counted only those ballots which were cast by stockholders who had paid their assessment. This count would elect the Irvin Board of Directors while a count including the ballots cast by the alleged delinquent stockholders would have elected the Newport Board. There is some conflict in the evidence as to what occurred subsequent to the count, but we are satisfied that at its conclusion, as above stated, the president declared that the Irvin Board was elected; sat down, and began to write a certificate of election. The paper was taken from him by violence, and he left the room, taking the ballot box with him. A mob followed him, and demanded the box, and he finally surrendered it to a son of Mr. Newport, who was a deputy sheriff. The meeting then re-organized, and elected Mr. Newport, who was vice-president, president

*pro tem.,* and proceeded to recount the vote, counting those ballots which had been rejected by the president.   Under this count, the Newport Board was declared elected, and Newport, as president *pro tem.,* issued to them a certificate of election.   Irvin issued like certificates to the Irvin Board.   Crawford and Sommerer, who were elected by both parties, chose finally to act with the Irvin Board. Thereafter the Irvin Board elected Irvin president and Upthegrove secretary, and the Newport Board elected Newport president and Yates secretary.   Both boards elected Swayze treasurer, and both now claim to be the genuine board of directors of plaintiff.   We cannot agree with counsel for plaintiff in the contention that the president has no power to decide who are eligible to vote for directors.   On the contrary, we hold that he has that power, and that for an erroneous exercise of it there is no remedy except by appeal to the courts.   Section 5062, B. & C. Comp., provides that the president of the corporation shall act as inspector of elections and certify who are elected directors.   For that purpose he is a public officer, designated by a public statute, and in our opinion has the same authority in the matter of receiving and rejecting votes that a judge or inspector of a general election has. There is no reason given for an appeal from his decision to a vote of those present and claiming a right to vote that could not be urged in favor of the same procedure at a general election.   To permit such an appeal to those present and claiming the right to vote would in effect allow persons to be judges of their own qualifications and place the election of directors at the mercy of any body of persons who saw fit to make a claim, however groundless, of the right to participate in the election.

The cases cited by counsel do not bear out their contention.   In the case of *In re Martin (State* v. *Chute)* 34 Minn. 135 (24 N. W. 353), there was nothing in the law or the charter of the corporation designating who should

pass on the eligibility of voters, and for that reason it was held that such question was for the meeting as a whole, and that the president had no authority to decide it. The court puts its decision squarely upon the ground that no provision had been made by the charter or the by-laws, authorizing the president to act as teller or inspector or to pass on such questions. By implication, at least, they would seem to be of the opinion that with a provision of the character found in our statute the contrary rule would obtain. In *State ex rel. Ryan* v. *Cronan,* 23 Nev. 437 (49 Pac. 41) the court followed *In re Martin (State* v. *Chute)* 34 Minn. 135 (24 N. W. 353), and for the same reason. *State* v. *Smith,* 15 Or. 98 (14 Pac. 814: 15 Pac. 137, 386) was a *quo warranto* proceeding brought to oust Smith and his associates or to prevent them from acting as directors. No question was there raised as to the right of the president to pass upon the eligibility of a voter in the first instance, but it was claimed that, having decided erroneously, the court would set aside such decision on *quo warranto,* which it did. In the *Matter of the Mohawk & Hudson Railroad Company,* 19 Wend. (N. Y.) 135, the court held that inspectors act judicially in determining whether a vote is receivable and ministerially in receiving or rejecting. In *Commonwealth* v. *Woelper,* 3 Serg. & R. 29 (8 Am. Dec. 628), the court say:

"It is said that the inspectors are judges, and may decide the election as they please, by the admission or rejection of votes. Their office is ministerial rather than judicial. The charter declares who may vote, and the inspectors are bound by it. To be sure, they must in some cases exercise their judgment, when a question arises on the construction of the charter. But so must every ministerial officer, when a question arises as to the extent of his powers. If an inspector refuses a vote, the injured person is not without remedy. The decision of the inspector may be examined before some competent tribunal. This is exemplified in the present prosecution, the object of which is to annul the proceedings of the inspectors."

It will be noticed that the court does not deny the right of the inspector to decide in the first instance. It points out the remedy, an appeal to the courts, not an appeal to the meeting. It only holds that the decision of the inspector is not final. The court, it is true, used the expression that the duties of the inspectors are rather ministerial than judicial, and in some respects this is correct. His duties partake of both characters as pointed out in the *Matter of the Mohawk & Hudson Railroad Company*, 19 Wend. (N. Y.) 135. In the principal case Justice YEATES dissented from the views of his two associates and held that an inspector was a judicial officer in a broad sense. Perhaps the truth lies between the two extremes; an inspector being a judicial officer to the extent that his decision is valid until set aside by some competent tribunal.

2. There is little evidence before us upon the subject of the correctness of the ruling of the president upon the qualifications of voters. Section 5058, B. & C. Comp., in effect, prohibits a stockholder who is delinquent in his assessment from voting. The record introduced in evidence shows that an assessment due December 1, 1908, had been levied, and the evidence tends to show that the secretary, at the time the ballot was being taken, examined the corporate books and informed the president who the delinquents were and that he refused to allow these stockholders to deposit their votes in the ballot box or to count them. We think that as the board of directors have power to levy an assessment their action is *prima facie* regular, and that the burden of proof is upon plaintiff to show irregularity. It is claimed that it is irregular and void because premature; that as the assessment levied by the Secretary of the Interior upon lands in the Hermiston unit was not due or delinquent until December 1, 1909, the Water Users' Association had no authority to levy an assessment upon property in that unit payable December

1, 1908. The proceedings taken by the Secretary of the Interior are not in evidence, nor have we been cited to anything in or outside of the record, which tends to show when the government assessment matures. But, taking counsel's statement as correct, it does not follow that the plaintiff's assessment should coincide in point of time with that of the government. The situation seems to be that the plaintiff association has agreed with the government to collect and pay the assessment levied by the government by itself levying one of like amount upon its own stockholders. Considering the delays incident to collection, it might well conclude to institute proceedings early enough to have the money ready when the government assessment fell due, and, while the time allowed for maturity of plaintiff's assessment seems short, we cannot say as a matter of law that it is unreasonably so. As to the lack of uniformity of the assessment, we have no means of knowing what the terms of subscription of any stockholder of the corporation may have been. The subscription contract is not submitted, nor have we any means of knowing whether other stockholders outside the Hermiston unit have paid in full for their stock, or whether, by the contract, payments were to be made by stockholders in each unit as the work progressed. The by-laws make provision for special assessments on property specially benefited, and, finding an apparently valid assessment spread on the records of the corporation by a unanimous vote of the directors, we are compelled to assume it valid until it is affirmatively shown to be void. This being the case, we must hold in this proceeding that the president had the authority to reject, and, so far as the evidence in this case shows, properly rejected, the votes of the alleged delinquent stockholders, that his certificates of election to the Irvin Board were properly issued, and that they are *de jure* the officers of the corporation.

3. We are aware that equity will not usually interfere to decide which of two claimants is entitled to an office, but, where the question arises as an incident to some other equitable matter, it is the duty of the court to decide it. The plaintiff claims that the Newport Board are regularly elected, and the defendants claim the same thing for the Irvin Board. No case is cited and none has been discovered where a director of a corporation holding all the evidence and *indicia* of regular election has been restrained in equity from peacefully exercising the duties of his office by one not *prima facie* an officer, but merely claiming to be a *de facto* officer. Technically speaking, the term *"de facto* officer" applies to a public officer only, and then usually only to an office having a physical existence and property. A county clerk, a sheriff, or a mayor usually has a place designated by law for holding his office and books and records, which indicates to the public his authority to act. In the interest of public peace and good order, the courts have wisely held that persons in the actual physical possession of such offices and records shall, as to third persons and the public, be recognized as such until ousted by proper procedure. But the officers of a private corporation do not possess such relation to it or to the public. Their status is that of agents of their principal. If they are duly elected, they are such agents, or, if their acts are recognized by the corporation, they may bind it, but, as against the persons having the *prima facie* evidence of election, they cannot assert any right, except to ask physical protection until the right to the office is decided. The Newport Board is not here contesting in any way the right of the defendants to the offices they assume to occupy, and no decision that we make here is binding upon them directly, and there is nothing in the evidence to show that any act of the defendants will injure the corporation.

4. Giving to the status of the Newport Board as broad

a definition of *de facto* officers as the authorities recognize in the case of officers of private corporations, it fails to reach the standard. A *de facto* officer must be one publicly exercising the functions of an office and actually in possession of it.

"The expressions 'officer *de facto*,' and 'officer *de jure*,' have in many instances been applied to directors and other managing agents of private corporations. The expression 'officer *de facto*' has been used to designate an agent actually occupying the position claimed by him, and exercising its incidental powers. It is said that only the rightful representatives of the corporation, under a proper election or appointment, are officers *de jure*. The use of these expressions has been unfortunate, as it has led to confusion by reason of the application of the same terms to government officers and public officials. It has sometimes been suggested that a *de facto* officer of a private corporation occupies a position similar to that of a *de facto* government officer, or other public official, in possession of his office under color of right. But the two cases rest on different principles. Directors and other managers of a private corporation are merely agents, and the corporation can be charged with their acts only in accordance with the established doctrines of the law of agency. It is clear that, if a person assumes to act as agent for another without any authority, he does not thereby become the agent of such person either in fact or in law. An agency can never be created by the act of the agent alone. It is clear, also, that an appointment made by another person, assuming to act as agent for the common principal, does not bind the latter unless the appointing agent had authority. Hence, if a person assumes to act as agent of a corporation under an informal, and therefore unauthorized, appointment by a superior agent, the corporation will not be responsible for the acts of the person so charged, unless by application of the rules discussed in the preceding sections. The validity of acts performed by a public officer, actually in the exercise of the powers and duties of the office claimed by him, rests on a distinct rule of law. In order to secure the peaceful and orderly government of the community, the rule has been established that the right of a *de facto*

public officer to exercise the powers of his office cannot be investigated in a collateral proceeding. It must be determined once for all times in a direct proceeding to oust the officers." 2 Morawetz, Private Corp. § 640.

Here there is no evidence showing that the Newport Board is in the actual exercise of its functions, or that it is recognized generally by the public or by those having dealings with the corporation, as a legitimate board of directors, or that it is performing generally the duties of a board of directors. On the contrary, it appears that the Secretary of the Interior of the United States Reclamation Service, with whom a great portion of the business of the corporation is transacted, refuse to recognize it and transact business wholly with the Irvin Board, and that such board is actually engaged in collecting funds and performing the business of the corporation. It is true that the secretary of the Newport Board refuses to turn over the books and the seal of the corporation to the Irvin Board, but the possession of the seal and the old books by him does not make the members of the Newport Board *de facto* directors, and, so far as it appears from the testimony, their secretary is the only person who recognizes them as officers.

5. There is no such general recognition of the Newport Board as would entitle them to claim as officers *de facto* even under the liberal rule held in respect to public offices. An officer *de facto* is defined to be "one who has the reputation of being the officer he assumes to be in the exercise of the functions of the office, and yet is not a good officer in point of law." *Barlow* v. *Stanford,* 82 Ill. 298; *Parker* v. *Kett,* 1 Ld. Raym. 658.

"A mere claim to be a public officer, and exercising the office, will not constitute one an officer *de facto*. There must be, at least, a fair color of right; or an acquiescence by the public in his official acts so long that he may be presumed to act as an officer by right of appointment or election." *Brown* v. *Lunt,* 37 Me. 423.

All the authorities seem to agree that a certain degree of notoriety and recognition by the public and persons having business relations with the office are necessary to constitute one a *de facto officer*, and these are practically absent in this case. So far as disclosed by the evidence, the Irvin Board is the one which is recognized by the great majority of interests having business with the corporation, while the claim of the Newport Board rests on the fact that the former secretary holds possession of the old records and old seal. The subsequent action of the meeting in electing a president *pro tem.*, and recounting the ballots had no effect upon the election. The president, who is the person designated by law to make the count and declare the result, had acted and was violently interfered with in the discharge of his duties. He might reasonably have expected further violence if he had attempted to continue to discharge them in accordance with his ideas of the law. Under the circumstances, he was justified in refusing to further preside or remain in attendance, and we cannot hold that those, whose violent acts caused him to vacate his office as inspector, could take advantage of their own lawless conduct to re-organize the meeting and recount the votes.

We agree with the court below in finding that the Newport Board, so far as disclosed by the evidence in this case, are neither *de facto* nor *de jure* directors. The decree of the circuit court is affirmed.          AFFIRMED.