## In re CAMPBELL COUNTY HARDWARE CO.

(District Court, E. D. Tennessee, N. D. November 19, 1924.)

No. 2884.

**1. Bankruptcy ⟨⟩43.**

Corporate directors, elected at special meeting before end of term of regularly elected directors, did not constitute board of directors, so as to authorize their filing voluntary petition in bankruptcy, if permissible under Bankruptcy Act as amended by Act Cong. June 25, 1910 (36 Stat. 838).

**2. Corporations ⟨⟩54.**

Corporate by-laws are in nature of contract between stockholders, and regulate conduct and define duties of stockholders toward corporation and among themselves, and are not abrogated because misplaced.

**3. Corporations ⟨⟩283(4).**

Corporate director, as receiver of corporation, is not estopped to attack validity of election of directors at special meeting because of his presence and participation therein.

**4. Bankruptcy ⟨⟩51.**

Intervening petition in voluntary bankruptcy proceedings by receiver of corporation, seeking to set aside adjudication, is not collateral attack on adjudication, and is authorized by Bankruptcy Act, § 2, cl. 6 (Comp. St. § 9586).

**5. Corporations ⟨⟩289.**

Corporate directors, elected at special meeting at time that legally constituted board of directors was in existence, *held* not de facto directors.

**6. Corporations ⟨⟩289.**

To constitute a "de facto" board of directors," it must in fact be in charge of affairs of company, and must be recognized as such and as performing legitimate functions and duties.

[Ed. Note.—For other definitions, see Words and Phrases, De Facto Board of Directors.]

**7. Bankruptcy ⟨⟩51.**

Receiver of corporation has such substantial interest in affairs and assets of corporation as justifies his intervention in voluntary bankruptcy proceeding to have adjudication set aside.

In Bankruptcy. Voluntary petition in bankruptcy by the Campbell County Hardware Company, wherein S. D. Queener, as receiver, intervened. Adjudication vacated, and petition dismissed.

J. Alvin Johnson, of Knoxville, Tenn., for bankrupt.

Smith, Word & Anderson, of Knoxville, Tenn., for receiver.

HICKS, District Judge. The Campbell County Hardware Company is a domestic corporation. Its charter was granted May 26, 1922. Its purpose was to sell hardware at Jacksboro. It had the right "to establish by-laws and make all rules and regulations not inconsistent with the laws and the Constitution deemed expedient for the management of its corporate affairs." The charter further provided that "the term of all officers may be fixed by the by-laws of the corporation, the same, however, not to exceed two years." It further provided that "the board of directors shall consist of five or more members at the option of the corporation, to be elected either in person or by proxy, by a majority of the votes each year, and shall keep a full and true record of all their proceedings. * * * A majority of the board of directors shall constitute a quorum *and shall fill all vacancies until the next election.*" The first board of directors shall consist of "five or more members, who shall apply for and obtain the charter." At the first meeting of the incorporators by-laws were adopted; the minutes of that meeting setting forth that "a set of the proposed by-laws for the government of the company and the regulation and management of its affairs was presented, and after being read was, on motion duly made and carried, adopted section by section and as a whole, and the secretary was directed to record the same in the record book of this company immediately after the minutes of this meeting." The by-laws were so recorded.

Article 1, section 2, of these by-laws provided that "the annual meeting of the stockholders shall be held on the first Tuesday of January after the fifth each year, at the principal offices of the company *for the elec-*

*tion of the board of directors for the ensuing year."* Said section also provides that a notice of the annual meeting shall be mailed to each stockholder, to his address as the same appears on the record of the company, at least five days prior to the meeting. Article 1, section 3, provides that "a special meeting of the stockholders may be held at any time upon the call of the president or by order of the board of directors, and it shall be the duty of said president to call such a meeting whenever requested so to do by stockholders holding 10 per cent. of the capital stock. Written notice of said special meeting shall be mailed to each stockholder at his address as the same appears on the records of the company at least five days prior to the meeting, *stating therein the purpose for which the meeting is held."* Article 1, section 4, provides that "a majority of the issued and outstanding stock of the company must be represented in person or by proxy to constitute a quorum. Only those shall be entitled to vote who appear as stockholders upon the records of the company. If a quorum fails to attend at the time and place of meeting, those who do attend may adjourn until the meeting shall be regularly constituted." Article 1, section 6, provides that "all the meetings of the stockholders shall be presided over by the president. * * * The proceedings of each meeting shall be verified by the signature of the president."

Article 2, section 1, provides that "the affairs of this company shall be *under the management of its board of directors* and such officers and agents as such board may elect or employ." Article 2, section 2, provides "that the board of directors shall not be less than three nor more than seventeen in number, the number to be determined by the stockholders from time to time. Said directors shall be elected each year at the annual meeting of stockholders, to hold office until the next annual meeting or until the election of their successors. Vacancies in the board shall be filled by the board of directors. The person elected shall hold office until the next annual meeting of stockholders, when the vacancy shall be filled as usual." Article 2, section 5, provides that "a majority of the board of directors in office shall be necessary to constitute a quorum for the transaction of business. Any question coming before the board shall be determined by a majority of those present."

Article 6, section 5, provides that "bylaws may be altered, amended, modified, or added to by a vote of the stockholders holding a majority of the stock of the company pres-

ent in person or by proxy at any general meeting called for that purpose of stockholders of the company."

At the annual meeting of January 6, 1923, I am assuming that it was intended to elect the following persons as directors, to wit: S. D. Queener, J. D. Barlow, F. D. Cannon, J. D. Rose, D. H. Powers, J. A. Robinson, and E. L. Gaylor—although an inspection of the minutes leaves this matter somewhat doubtful. At the annual stockholders' meeting on January 12, 1924, which the minutes recite to have been held in pursuance of a regular call duly made and mailed to each, with stockholders present representing 208 shares, a majority, J. D. Barlow, J. E. Sharp, S. D. Queener, R. S. Gallaher, E. H. Powers, W. H. Archer, and J. D. T. Shown were unanimously elected directors for the year 1924. On April 2, 1924, there was a meeting of stockholders, at which 225 shares were present, which I assume was a majority. The general manager read a report, which was discussed, and motion was made by J. J. Sharp and seconded by Dr. Queener "that we go into voluntary receivership. After considerable discussion, motion carried. Dr. Queener was then elected receiver." Motion was duly made and carried that E. H. Powers be legal adviser.

On April 3, 1924, the company filed its original bill in the chancery court of Campbell county in the nature of a creditors' bill, and S. D. Queener was appointed receiver, with directions to continue the business, and at the May term, 1924, of said chancery court, the bill was sustained as a general creditors' bill, and without incumbering this memorandum with details, upon petition of the receiver the chancellor, on July 11, 1924, ordered a sale of the assets of the hardware company, which sale was fixed by the receiver for August 16, 1924. On July 29, 1924, there appears to have been a meeting of stockholders. This was of necessity a special meeting, but there is nothing to indicate that it was had upon either the call of the president or by order of the board of directors, or that any written notice of it was mailed to each stockholder five days prior to the meeting, stating the purpose for which the meeting is held, as required by article 1, section 3, of the by-laws. This meeting adjourned until 2 p. m. Saturday, August 2d. The meeting on Saturday, August 2d, adjourned until Saturday, August 9th. Then follows the minutes of a meeting, which I assume was held on Saturday, August 9th, because the minutes, although not dated, state that "the stockholders of Campbell County

Hardware Company met pursuant to adjournment."

The minutes indicate that at that meeting there was represented, either in person or by proxy, 195 shares of stock. I am unable to ascertain from the record whether this was a majority of all outstanding stock. The minutes of this meeting contain this entr : "Motion duly made and carried that W. H. Archer, Winston Baird, A. Gamble, C. C. Sharp, and J. L. T. Shown be elected as new board of directors." Then follows this entry: "The old by-laws having been misplaced during the trial of Broyles v. Hardware Company, it was thought desirous to adopt some more and have them spread on the records of the company, and they were read section by section and adopted accordingly, and will be read and adopted as a whole." The minutes of this meeting are signed J. L. T. Shown, secretary. I find nothing to indicate any organization of this new board of directors, composed of Archer, Baird, Gamble, Sharp, and Shown; but there appears attached to the voluntary petition in bankruptcy, filed by the Campbell County Hardware Company on August 14, 1924, a resolution purporting to have been passed by said board of directors on August 13, 1924, and unanimously adopted, to wit:

"Whereas, this corporation is unable to pay its debts and is insolvent, within the meaning of the acts of Congress relating to bankruptcy:

"Resolved, that this corporation petition the United States District Court for the Eastern District of Tennessee for its adjudication as a bankrupt, and that J. L. T. Shown, the president of this corporation, be and he hereby is authorized and directed to make, verify, and file all such petitions, schedules, and other papers as may be requisite or necessary to procure such adjudication."

Upon the filing of this petition in bankruptcy, the court, upon application of the alleged bankrupt and certain creditors, by a preliminary restraining order, restrained the sale advertised by the receiver to be made on August 16th, and ordered a hearing upon the application for a preliminary injunction to be had on August 19th. On said August 19th, Queener, the receiver, in person and by counsel, appeared before this court and moved to file an intervening petition, seeking to set aside the order of adjudication which had followed as a matter of course upon the filing of the voluntary petition by the alleged bankrupt. He also moved to dissolve the restraining order. These motions were resisted by counsel for the alleged bankrupt, but the court allowed Queener, as receiver, to intervene, and he did, on September 20, 1924, file his petition, and without going into detail concerning its contents it suffices to say that he seeks to have the voluntary petition of the alleged bankrupt dismissed and the order of adjudication set aside. His intervening petition is based in the main upon the contention that the hardware company's creditors' bill in the state court was a surrender of all power and authority over its property and assets, and that the company was therefore estopped to seek an adjudication of bankruptcy; and, second, that there was no authority in law for the hardware company to file a petition in bankruptcy, because the directors who authorized such action were not in fact directors of the company.

This intervening petition was answered by the alleged bankrupt, and the answer admits the filing of a creditors' bill in the state court, but charges that it was done through certain misrepresentations made by Queener. The answer recites the fact of the filing of the voluntary petition in this court, and the adjudication thereunder, and the reference to the referee, and the filing of the petition for the restraining order on the 14th of August restraining the above mentioned sale. This answer resists any attempt to set aside the adjudication upon either ground set up in Queener's petition. It denies that the filing of the creditors' bill estopped the company to file a voluntary petition in bankruptcy. It avers that Archer, Baird, Gamble, Sharp, and Shown were the directors of the corporation on August 14, 1924, when it adopted the resolution authorizing bankruptcy heretofore quoted. It avers that Queener was present and presided in the meeting of the stockholders which elected the aforesaid gentlemen directors. It denies any illegality in said election, and it further makes charges of mismanagement against Queener as receiver, and that his actions in the premises have prevented a reorganization of the company, and it insists that the administration of the alleged bankruptcy shall be proceeded with in this court.

Certain creditors also filed their petition on September 20th, praying that the aforesaid adjudication be sustained. On September 20, 1924, the court heard evidence upon these various matters, and heard argument of counsel on September 27th.

With due deference to the learned opinion of Judge Foster, one of the ablest District Judges, in Re Associated Oil Company (D. C.) 271 F. 788, I am made to doubt that the filing of a creditors' bill by a corporation

in a state court and the turning over of its assets estops it from filing a voluntary petition in bankruptcy. This proposition only "seemed" to be true to Judge Foster, and I have found nothing to support it, and certainly no support for it is found in the Bankruptcy Act (Comp. St. §§ 9585–9656). See, also, Brown v. Crawford (D. C.) 252 F. 258 and In re C. Moench & Sons Co., 130 F. 685, 66 C. C. A. 37, and cases cited. However, with the view I take of the situation in the present case, the decision of this question is not obligatory.

[1, 2] The amendment of 1910 to the Bankruptcy Act (36 Stat. 838), allowing voluntary bankruptcies by corporations, does not specify the action to be taken to bring about an adjudication; but, conceding that the board of directors may authorize bankruptcy by such a resolution as was adopted in this case, then it occurs to me that the testing question here is: Were Archer, Baird, Gamble, Sharp, and Shown, the gentlemen who passed this resolution, the board of directors? I cannot escape the conclusion that they were not. As heretofore pointed out, at the regular annual stockholders' meeting on the 12th day of January, 1924, in pursuance of a regular call mailed to each stockholder, and with a majority of the stock present, Barlow, Sharp, Queener, Gallaher, Powers, Archer, and Shown were unanimously elected directors for the year 1924. They had neither died, nor resigned, nor abandoned their trust, and had in April authorized the filing of the creditors' bill. It does not appear that the special meeting of August 9th was called in pursuance of article 1, section 3, of the by-laws. It is not certain that a majority of the stock was present so as to constitute a quorum. It does not appear that these alleged directors were elected by a majority of the stockholders present, as required by article 1, section 5, of the by-laws. It does appear that the meeting was not presided over by the president, as required by article 1, section 6, of the by-laws, and the minutes were not verified by the signature of the president, as required by article 1, section 6. These by-laws, as matter of law, are in the nature of a contract between the stockholders, and regulate the conduct and define the duties of the stockholders toward the corporation and among themselves. Flint v. Pierce, 99 Mass. 70, 96 Am. Dec. 691. It does not appear that, after the election of said alleged directors, some new by-laws were adopted, because the old by-laws had been misplaced; but the new by-laws were not adopted until after the alleged election of directors, and the old by-

15 F.(2d)—6

laws did not become abrogated because they had simply been misplaced, and there is nothing to indicate the subject-matter of the new by-laws.

[3, 4] I am constrained to hold that Archer, Baird, Gamble, Sharp, and Shown were not directors by virtue of any election on August 9th; but it is proper to say that Archer and Shown were directors by reason of their election on January 12, 1924. The alleged bankrupt insists that the validity of this election of directors cannot be attacked by Queener, because he was present and participated in their action. This position is not maintainable, because it must be remembered that Queener, the receiver, is making the attack as an officer of the state court, and not Queener as a stockholder. Nor can I agree with the insistence that Queener's intervening petition as receiver is a collateral attack upon the adjudication. The filing of such a petition is authorized in the case of Associated Oil Co. (D. C.) 271 F. 788, and in Zeitinger v. Hargadine-McKittrick Dry Goods Co., 244 F. 720, 157 C. C. A. 167. It is also authorized by the act itself in chapter 2, § 2, paragraph 6 (Comp. St. § 9586). From the very nature of bankruptcy proceedings, such intervening petitions are necessarily proper, because a court of bankruptcy is a court of equity, seeking to administer the law according to the spirit, and not merely by its letter. In re Kane, 127 F. 552, 62 C. C. A. 616. I am also following my own action, taken after much study, in the case of In re Drake Motor & Tire Mfg. Co., 16 F.(2d) 142, recently before this court.

[5, 6] With reference to the suggestion that Archer, Baird, Campbell, and others were at least de facto directors, it may be observed that, if there is in law any such thing as a de facto officer with respect to any other than a public office, the situation here has no element reflecting the idea that these gentlemen might be regarded as de facto directors. As before stated, the record shows that there was already in existence a legally constituted board of directors, which had functioned, according to the minutes, at least until March 24, 1924, and which, in pursuance of the stockholders' meeting of April 2, 1924, directing a voluntary receivership, had placed the affairs of the company in the hands of the state court and of the receiver; and whose term of office had not expired and would not expire until next January. To constitute a de facto board of directors, it must in fact be in charge of the affairs of its company, and must in fact be recognized as such, and as performing the legitimate functions and

duties of a board of directors, and then it is only recognized as a de facto board as a matter of policy. Umatilla Water Users' Ass'n v. Irvin, 56 Or. 414, 108 P. 1016.

[7] The result I have reached is that, the legally elected and constituted board of directors having, in accordance with the directions of the stockholders, chosen to wind up the affairs of this concern in the state court, Messrs. Archer, Baird, Gamble, and others, claiming to be directors under the purported election of Saturday, August 9, 1924, which election I consider as void, because in violation of the by-laws, which by-laws must be regarded as in the nature of a contract between the stockholders, directors, and the corporation (Honeá v. American Council, J. O. U. A. M., 139 Tenn. 25, 201 S. W. 127), and no authority was ever vested in this alleged board of directors to commence a voluntary bankruptcy proceeding in this court, and that therefore the intervening petition of Queener, receiver, must be sustained; it appearing to me that Queener, as receiver, has such a substantial interest as an officer of the state court in the affairs and assets of this concern as justifies his intervention.

The adjudication heretofore made will therefore be vacated, and the voluntary bankruptcy petition will be dismissed, at the cost of the directors Archer, Baird, Gamble, and others. I make this final observation:

It occurs to me that the real antagonism between the parties in interest here is over the point as to the fitness and conduct of Queener as receiver. This, of course, is not a justiciable matter here. This question is for the state court, whose receiver he is. Neither can it in this proceeding, which involves simply the matter of authority to bring it, entertain the question as to whether the affairs of the hardware company can be more economically and efficiently administered in this court than in the state court. This was a matter for the consideration of the directors and stockholders, who chose the state court.