JAMES M. SAMUELS *et al*

*v.*

THE DRAINAGE COMMISSIONERS, etc.

*Filed at Springfield June 14, 1888.*

1.  DRAINAGE LAW—*lien for drainage assessments—foreclosure—under what statute.* Section 253 of the Revenue law has exclusive reference to the foreclosure of liens for taxes, and the consequent penalties, interest and costs, and was never intended to apply to the foreclosure of liens for drainage assessments. That is regulated by section 72 of the Drainage act of 1885.

2.  Section 72 of the Drainage act of 1885, provides a special proceeding for the foreclosure of the lien for drainage assessments, independently of the one given by the Revenue law, for the foreclosure of liens for ordinary taxes, and it should be pursued.

3.  SAME—*decree of foreclosure—sale by the master.* It is no objection to a decree for the foreclosure of the lien of a drainage assessment, that it directs a sale to be made by the master in chancery. Section 72 of the act of 1885 declares, that any judgment so recovered may be enforced and collected as other judgments in the same court.

4. SAME—*constitutionality of act, as to mode of levying and collecting assessments.* Section 31, article 4, of the constitution, as amended in 1878, confers upon the General Assembly all necessary power in matters of drainage, both as to the mode of the levying and collecting of special assessments upon property benefited and lying within the drainage districts as organized under its provisions. The mode provided in section 72 of the Drainage act of 1885, for the foreclosure of the lien of assessments, is clearly within the powers conferred by the constitution.

5. SAME—*drainage commissioners, as officers de facto.* There being such an office as drainage commissioners, persons assuming and exercising the duties of that office are *de facto* officers, and their official acts will be held valid until their right is called in question by *quo warranto*, and they are dispossessed thereby of all power under the statute.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. JOHN C. BAGBY, Judge, presiding.

Messrs. CONNOLLY & MATHER, for the plaintiffs in error.

Mr. E. A. WALLACE, for the defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case was brought by the Commissioners of the Central Special Drainage District, in the county of Mason, against James M. Samuels and Matilda Samuels, to foreclose a lien claimed for drainage assessments, against certain lands owned by defendants. The proceeding was commenced under section 72 of "An act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named," approved June 27, 1885. That section provides that the assessments made under said act shall be a lien on each tract assessed in the district, and if the assessment is not paid on or before the annual sale of lands for non-payment of taxes, the commissioners may file a petition in the circuit court of the proper county, "for a foreclosure of such lien; and the commissioners may proceed in their corporate name and capacity to foreclose such lien, as provided by law." It is conceded by counsel for defendants, the bill shows everything necessary for

the creation of a lien under the section of the statute cited. It may, therefore, be assumed, in the brief discussion that is to follow, if the allegations of the bill are to be regarded as true, complainants are entitled to the relief asked for, unless some valid objection appears on the face of the record itself. On motion of defendants, the venue of the cause was changed from Mason county, where the suit was commenced, to Fulton county. Although a rule was laid upon defendants to answer the bill, neither of them filed any answer, but made default, and thereupon it was taken as confessed as to both of them. The cause was then referred to the master in chancery, to take and report proofs, and it is then recited in the decree, the cause came on for "final hearing, on bill, exhibits, and the default of" defendants, "and the bill taken for confessed against them; the report of the master in chancery, the documentary and oral proofs." It appears the court, by its decree, found that every material allegation of the bill was true, and decreed a foreclosure of the lien alleged to exist against the lands of defendants. Only such errors are insisted upon as are thought to appear on the face of the record.

It is said, the bill shows the levy, in the aggregate, was $113,862, and that the decree finds the aggregate to be a much less sum, and it is submitted the decree is so uncertain and contradictory in this respect it should not be allowed to stand. The amended transcript of the record filed in this court shows the alleged error in this respect does not exist, and this suggestion of error need not be further considered.

It is also made a point against the present decree, that the lien claimed is not foreclosed in the manner provided by law. The argument seems to be, the proceedings to foreclose the lien for drainage assessments should be the same as provided by law for the foreclosure of tax liens on lands, under section 253 of the Revenue act. It is a sufficient answer to the position taken, to say that section 253 of the Revenue law has exclusive reference to the foreclosure of liens for taxes under

the Revenue law, and the consequent penalties, interest and costs. It was never intended to apply to the foreclosure of liens for drainage assessments, which are quite a different thing from the ordinary revenue of the State. Section 72 of the Drainage act provides a special proceeding for the foreclosure of the lien for drainage assessments, independent in itself, and that has been pursued in this case. It is expressly provided, the remedy given by that section "shall be taken and held as an additional means to enforce payment of such delinquent assessment." This view of the remedy provided by section 72 for the collection of drainage assessments, renders it unnecessary to remark upon the constitutional objections insisted upon. The mode provided by section 72 for foreclosing the lien in such cases, is clearly within section 31, of article 4, of the constitution, as amended by the popular vote in 1878. That section of the constitution would seem to confer upon the General Assembly all necessary power in such matters, both as to levying and collecting special assessments upon property benefited, and lying within the drainage districts organized under its provisions. As was said by this court in *Huston* v. *Clark*, 112 Ill. 344: "The special amendment of the constitution, adopted in 1878, so far as it invades the former limitations of the constitution, must prevail, and such limitations are not applicable to the subject matter of this special assessment." There is nothing in the objection the master in chancery is directed to make sale of the property in default of payment of the decree. Section 72 declares, "any judgment so recovered may be enforced and collected as other judgments in the same court." That is sufficient authority for appointing the master in chancery to execute the judgment or decree of the court.

Lastly, it is said the assessment in question was made by persons having no authority either *de jure* or *de facto*, and is therefore void. It is not perceived how this question can arise on this record; but if it does, it is not one that can pre-

vail in this case. Whether the clause of the statute providing for the election of drainage commissioners is valid or not, is a question that need not now be discussed. The legislature, by statute, has created, under constitutional authority, such an officer as commissioner of drainage districts. It is alleged the "Central Special Drainage District," in Mason county, was duly organized under the act of the General Assembly, in force July 1, 1885, and that afterwards petitioners were elected commissioners, and that they entered upon their duties as such, and are now acting. The default of defendants admits these allegations of the bill, and the court found, from the evidence, such was the fact. There being such an office, and petitioners having assumed the duties of such office, and are now acting commissioners of the drainage district, they are *de facto* officers, and their official acts will be held to be valid until their right to exercise the duties of such office is called in question by *quo warranto*, and they shall be dispossessed of all power under the statute.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*