Argued December 22, 1908, decided January 19, 1909.

## YAMHILL COUNTY *v.* FOSTER.

### [99 Pac. 286.]

Taxation—Uniformity—Valuation of Property.

1. Perfect uniformity in the valuation of property being unattainable, an approximation is all that is required.

Taxation—Rate—Uniformity.

2. The rate of taxation must be equal and uniform throughout the taxing district, whether State or local.

Taxation—Disposition of Taxes—County and State—Right of State.

3. Though the general scheme of assessing and collecting taxes creates the relation of debtor and creditor between the county and the State for the amount of State revenue apportioned to the county, to the extent of the county's liability therefor, for which an action may be maintained and for which the county may be charged, whether it collects the tax or not, the debt so created is not a contract obligation, but is a liability imposed by the State on one of its governmental agencies, the payment of which contemplates and requires the exercise of the taxing power which is governed by constitutional provisions.

Taxation—Nature—Scope.

4. Every burden which the State imposes on its citizens with a view to revenue is levied under the power of taxation, whatsoever its name.

Taxation—Collection of Taxes—Diversion.

5. The State has no such control over the funds of a county that it may divert the money received from the citizens of one county by taxation for the benefit of citizens of another.

Taxation—Taxes Collected—Nature of Property.

6. Money collected as taxes by a county is not the property of the county in the sense which property of a private person or corporation is regarded, but is public property, and within constitutional limits is subject to legislative control.

Taxation—Application—Power to Regulate.

7. A county may be required by law to apply all or part of its funds to any legitimate public purpose, so long as it does not conflict with some constitutional provision.

Taxation—Levy—State Tax—Apportionment.

8. Section 1, Article IX, Constitution of Oregon, requires the legislature to provide by law for a uniform and equal rate of assessment and taxation, and prescribe such regulations as will secure a just valuation for taxation of all property except, etc. Section 2 requires that provision be made for raising revenue to defray the expenses of the State for each fiscal year, etc. *Held*, that Laws 1907, p. 455, § 9, providing for an apportionment of State taxes to be collected by the several counties not based on the assessed valuation thereof for the current year, but on the assessed valuation of the several counties for the five years preceding 1901, was invalid for nonuniformity.

Taxation—Collection of Taxes—Injunction.

9. Equity will not in general restrain the collection of public revenue for merely illegality or irregularity in the proceeding, such jurisdiction being confined to cases where the tax itself is not authorized by law or is assessed

on property not subject to taxation, or the persons exacting it are without authority in the premises or have proceeded fradulently, etc.

TAXATION—LEVY OF TAXES.

10. The levy of a tax is the exercise of a legislative, and not a judicial, power.

TAXATION—ACCOUNTING—STATE TAX.

11. Where State taxes illegally apportioned against a county have been collected and paid into the county treasury, the county cannot maintain a suit to restrain the county treasurer from paying the amount thereof to the State.

COUNTIES—NATURE OF CORPORATION—"COUNTY."

12. A county is not a private corporation, but merely a political agent of the State, created by a law for governmental purposes, and is charged with the performance of certain duties for and on behalf of the State, among which is the duty to levy and collect State taxes apportioned against it.

OFFICERS—DUTIES—ACCOUNTING AND SETTLEMENT—PAYMENT.

13. A public officer or agent of the State who receives money belonging to it cannot refuse to pay it over because it was illegally exacted from the person from whom it was collected.

From Yamhill: WILLIAM GALLOWAY, Judge.

This suit was commenced by Yamhill County against Harrison E. Foster, as treasurer of said county, to enjoin and restrain him, as such officer, from paying over to the State the money apportioned to said county for state revenues for the year 1908. The defendant demurred to the complaint and same being overruled, a decree was rendered in favor of plaintiff, from which decree defendant appeals.

Statement by MR. JUSTICE BEAN.

This suit was commenced in May, 1908, by Yamhill County to enjoin and restrain the treasurer of such county from paying over to the State the amount apportioned to the county for state revenues for the year 1908. The complaint, after alleging that plaintiff is a duly organized county and political division of the State, and defendant its duly elected and qualified treasurer, avers that in January, 1908, the Governor, Secretary of State, and State Treasurer, acting jointly as a board, ascertained by computation, in the manner required by law, the amount of money necessary to be paid by the several counties of the State for State purposes; that it was

the duty of the board to apportion such amount among the several counties by requiring each to pay such a proportion thereof as the assessed value of the property therein bore to the total assessed property of all the counties of the State; that, upon such basis of apportionment, the amount justly and equitably charge~~~~~~~ ~ plaintiff is $23,167.03, payable one-half thereof during the month of May, 1908, and the balance on the 1st of November of that year; that the State board, in disregard to its duties, made the apportionment in an arbitrary manner and by an arbitrary rule, without reference to the value of the property in the several counties, and that upon such basis the amount apportioned to plaintiff was $44,965; that, although plaintiff is ready, willing, and able, and has directed defendant, its treasurer, to pay to the State the amount justly due it, the defendant is about to, and, unless restrained by an order of the court, will, in obedience to the demands of the State officers, pay the entire amount apportioned to plaintiff county out of the money in his hands belonging to such county.

Defendant demurred to the complaint on the grounds (1) that plaintiff has no legal capacity to bring this suit; (2) that there is defect of parties defendant, in that the State should have been made a party; (3) that the complaint does not state facts sufficient to constitute a cause of suit; and (4) that it does not state facts sufficient to warrant the relief demanded.

The demurrer was overruled, and a decree rendered in plaintiff's favor, from which decree defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney-General, *Mr. Isaac H. Van Winkle,* Assistant Attorney-General, and *Mr. Frederick Mulkey* and *Mr. Clyde B. Aitchison,* as special counsel, with an oral argument by *Mr. Crawford.*

For respondent there was a brief over the names of *Mr. Martin L. Pipes* and *Messrs. McCain & Vinton,* with oral arguments by *Mr. Pipes* and *Mr. McCain.*

MR. JUSTICE BEAN delivered the opinion of the court.

Although not alleged in the complaint, it was assumed at the argument, and we shall assume, for the purposes of this opinion, that the provisions of the law governing the manner of levying, assessing, and collecting taxes, apportioning state revenues among the several counties, and requiring them to make the necessary levy, have been fully complied with by both the State and plaintiff county. The questions presented for consideration are, therefore, (1) whether the act providing the manner of apportioning state revenues among the several counties is constitutional; and (2) if not, whether plaintiff is entitled to any relief by this suit.

The several constitutional provisions, so far as applicable, are as follows:

"The legislative assembly shall provide by law for uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law." Article IX, Section 1.

"The legislative assembly shall provide for raising revenue sufficient to defray the expenses of the State for each fiscal year, and also a sufficient sum to pay the interest on the State debt, if there be any." Article IX, Section 2.

"Whenever the expenses of any fiscal year shall exceed the income the legislative assembly shall provide for levying a tax for the ensuing fiscal year, sufficient with other sources of income, to pay the deficiency, as well as the estimated expense of the ensuing fiscal year." Article IX, Section 6.

In 1907 the legislature passed an act for the levy and collection of taxes (Laws 1907, p. 453), section 8 of

which makes it the duty of the Governor, Secretary of State, and Treasurer, acting jointly, in January of each year, to ascertain by computation, as therein provided, the total amount of revenues necessary for state purposes, and to apportion the same among the several counties in accordance with a ratio or per cent fixed and provided in section 9 of the act, which apportionment is not based on assessed valuations for the current year, but, as appears from the act of 1901 (Laws 1901, p. 176, § 5), as amended in 1903 (Laws 1903, p. 302, § 1), is based on the assessment of the several counties for the five years prior to 1901. Section 10 requires the Secretary of State to transmit, immediately after the apportionment is made, an accurate transcript of it to the county clerks of the several counties, and by section 1 the county court of each county is required at its term in January of each year, to estimate the amount of money to be raised for county purposes and apportion such amount, together with state, school, and other taxes, according to the valuation of taxable property in the county for the year. Section 14 requires the county clerk to extend the taxes so levied upon the assessment roll and deliver it to the sheriff, who is tax collector of the county, and requires the county treasurers on or before the 1st of May to pay over to the State Treasurer, in gold and silver coin, out of the first moneys collected and paid into the county treasury for the current year, and over which the county has control, one-half of the amount of state taxes charged to their respective counties, and on or before the 1st day of November in each year to pay over the remainder so charged, without any deduction for any cause whatever. If the entire amount assessed to the county is not paid to the State Treasurer within 30 days after the same is payable, the unpaid balance becomes delinquent and a debt due and owing by the county to the State, upon which it is required to pay the legal rate of interest. Section 36 provides that if

the county treasurer shall fail to pay the money over to the State Treasurer, as required by law, for 10 days, he shall forfeit to the State 20 per cent of the amount withheld, and, if he fails for 30 days, he shall forfeit his office as treasurer, and be deemed a public defaulter.

1. In pursuance of these several provisions of law, the Governor, Secretary of State, and State Treasurer, acting jointly, in January, 1908, ascertained the amount of money to be raised during that year for state purposes, and apportioned the same among the counties in the manner provided in section 9, and the Secretary of State duly notified the county clerk of plaintiff county of such apportionment. After receiving notice thereof, and in January, 1908, the county court of plaintiff county, as required by section 1 of the act of 1907, made a tax levy for that year sufficient to raise the necessary money for county purposes and the amount so apportioned to the county by the State officers. The assessment roll, with the tax duly extended thereon, was delivered to the sheriff for the collection of the tax, and, after a sufficient amount had been collected and paid over to the county treasurer to satisfy the first installment due the State, the county commenced this suit to restrain and enjoin the treasurer from paying the money over, on the ground that the law under which the apportionment was made is unconstitutional and void, because such apportionment was not made on an equal and uniform rate throughout the State. The constitution requires the legislature to provide for an equal and uniform valuation of property for taxation by public officers, at regular intervals, and an equal and uniform rate of taxation upon the basis of such valuation, until the period arises for making it anew. Perfect uniformity and equality in the valuation of property is unattainable. Approximation is all that can be had, and, unless the method adopted by law for that purpose is clearly inadequate to secure the result, the courts cannot interfere.

53 OR.—— 5

2. But the rate of taxation must be equal and uniform throughout the taxing district, whether State or local. Gray, Limit. of Tax. Power, § 1514; Coonely, Tax. 717; *Cook* v. *Port of Portland,* 20 Or. 580 (27 Pac. 263: 13 L. R. A. 533) ; *East Portland* v. *Multnomah County,* 6 Or. 62; *Multnomah County* v. *Sliker,* 10 Or. 65; *Bright* v. *McCullough, Treasurer,* 27 Ind. 223.

3. Thus the Constitution of Illinois prescribes that the general assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to his or her property, and it was held that one class of counties could not be taxed at a higher rate for State purposes than another class that happened to be more largely in debt. *Ramsey* v. *Hoeger,* 76 Ill. 432. The constitutional provisions of Indiana are the same as ours. It is held in that State that a tax must be equal and uniform throughout the territory in which it is laid, whether state, county, or city, and consequently a law imposing a tax on one township for the erection of a county courthouse and jail therein was void, because it was for a county purpose, and not uniform throughout the entire county. *Board of Commissioners of Jackson County* v. *State ex rel.,* 155 Ind. 604 (58 N. E. 1037). The same principles would seem to apply to a tax for state purposes, and it is therefore difficult to formulate a satisfactory reason why the constitutional provisions invoked in the case, requiring equality and uniformity in the rate of taxation, should not apply to the State when it endeavors to raise money by an exercise of the taxing powers. It is true the general scheme of assessing and collecting taxes in this State creates the relation of debtor and creditor between the county and the State, for the amount of state revenues apportioned to the county, to the extent that it becomes a liability against the county for which an action may be maintained, and for which the county may be charged, whether it collects the tax or not. *State* v. *Baker County,* 24 Or. 141 (33 Pac. 530) ;

*Northup* v. *Hoyt,* 31 Or. 524 (49 Pac. 754). But the debt
or obligation thus created is not in the nature of a con-
tract obligation entered into by the county, but is a lia-
bility imposed by the State on one of its governmental
agencies, the payment of which contemplates, and neces-
sarily requires, the exercise of the taxing powers, and
this taxing power is governed by constitutional provisions.

4. Every burden which the State imposes upon its
citizens with a view to a revenue is levied under the
power of taxation, whether called a tax or some other
name.   Cooley, Const. Lim. § 713.

5. Nor has the State such control over the funds of
a county that it may divert the money received from the
citizens of one county by taxation for the benefit of the
citizens of another.

6. The money thus acquired is not the property of the
county in the sense in which property of a private per-
son or corporation is regarded, but is public property and
within constitutional limits subject to legislative control.

. 7. A county may, therefore, be required by law to
apply all or part of its funds to any legitimate public
purpose, so long as it does not conflict with some consti-
tutional provision.   27 Am. & Eng. Enc. Law (2 ed.),
868; *People ex rel. City of Springfield* v. *Power, County
Judge,* 25 Ill. 187; *Sangamon County* v. *City of Spring-
field,* 63 Ill. 66; *Brown* v. *Commissioners,* 100 N. C. 92
(5 S. E. 178) ; *Hamilton* v. *St. Louis County Court,* 15
Mo. 3; *State ex rel.* v. *St. Louis County Court,* 34 Mo.
546; *People* v. *Alameda County,* 26 Cal. 647; *Commission-
ers of Ottawa County* v. *Nelson,* 19 Kan. 234 (27 Am.
Rep. 101) ; *Gordon* v. *Cornes,* 47 N. Y. 608.   But the
citizens of one public corporation cannot be compelled
to pay the debts or obligations of another. *Simon* v.
*Northup,* 27 Or. 487 (40 Pac. 560: 30 L. R. A. 171).

8. And such would seem to be the effect of a law
imposing an unequal rate of taxation for state purposes.
It may be, and perhaps is, true that the basis of appor-

tionment of state revenues provided by the act of 1907 is, in fact, more equitable and just than if it were made by a uniform rate on assessed values throughout the State. But this is not the question. If the constitution requires the apportionment to be made in a certain way, it must be observed, and, if such an apportionment is unequal and unjust, because of the actions of local assessors, provision should be made by law for an equalization of valuation, as between the several counties for State purposes, so that every citizen will be required to pay his just proportion of the state taxes. But, if the law under which the state apportionment was made is in conflict with the constitution, it does not follow that plaintiff is entitled to relief in this suit. Whether such apportionment is technically a debt or should be otherwise designated, it is an obligation imposed upon the county by the State by virtue of the taxing power, and is essentially a tax or exaction levied for state purposes. The object of this suit is to prevent its collection by the State because it is alleged to be excessive. It is a general rule that a court of equity will not interfere to restrain the collection of public revenue for mere illegality or irregularity in the proceedings, but its jurisdiction is confined to cases where the tax itself is not authorized by law, or is assessed on property not subject to taxation, or the persons exacting it are without authority in the premises, or have proceeded fraudulently, or some other ground of equitable interference is shown. *Welch* v. *Clatsop County,* 24 Or. 452 (33 Pac. 934) ; *Hibernian Benevolent Society* v. *Kelley,* 28 Or. 173 (42 Pac. 3: 30 L. R. A. 167: 52 Am. Rep. 769) ; *Alliance Trust Co.* v. *Multnomah County,* 38 Or. 433 (63 Pac. 498) ; *State R. Tax Case,* 92 U. S. 575 (23 L. Ed. 663).

9. Mr. High says:

"It may be laid down as a general rule that equity will not interfere by injunction with the collection of a tax which is alleged to be illegal or void merely because

of its illegality, hardship, or irregularity, but there must be some special circumstances attending the threatened injury to distinguish it from a mere trespass, and thus to bring the case within some recognized head of equity jurisprudence; otherwise the person aggrieved will be left to his remedy at law." Hill, Injunctions, § 485.

10. The reason of this doctrine is that the levying of a tax is a legislative, and not a judicial, question, and a court of equity has no power to apportion the tax or make a new assessment. It is therefore hampered in the exercise of its jurisdiction by the necessity of enjoining the tax complained of, in whole or in part, without any power of doing complete justice by making or causing to be made a new assessment or apportionment, or any principle it may deem to be the right one. It is necessary that the taxes, without which the State could not exist, should be regularly and promptly paid into the treasury, and therefore no court of equity will allow an injunction to issue to restrain the collection of a tax, except upon a clear showing of some grounds of equitable relief other than the illegality or irregularity of the tax, leaving the aggrieved party to his remedy at law.

11. Now the county court, of plaintiff county, treated the apportionment of State taxes made by the State officers as a valid obligation against the county for the purpose of levying and collecting the money from the taxpayers with which to discharge it. The money has been collected and paid into the county treasury, and the county cannot be permitted, under such circumstances, to interfere by injunctive process to prevent its payment to the State.

12. A county is not a private corporation, and its rights are not to be determined by the law applicable to such a corporation. It is merely a political agent of the State, created by law for governmental purposes, and is charged with the performance of certain duties for and on behalf of the State, among which is the levy and

collection, in the manner provided by law, from the taxpayers within its limits, its proportionate share of the money necessary to be raised by direct taxation for the payment of the current expenses of the State. And after it has treated the law as valid, for the purpose of levying and collecting the tax, it cannot be permitted to interpose to prevent the treasurer from discharging a positive duty imposed upon him by law, and for a failure to perform which he would personally be subject to a severe penalty. When the tax is collected and paid to the treasurer, it becomes the duty of that officer under the law to pay the necessary amount to the State. For that purpose he is, in effect, the agent of the State, and must pay the amount apportioned from the first moneys coming into his hands, leaving the county, if it is injured, to obtain relief through the legislature or in some other appropriate manner.

13. A public officer or agent of the State who receives money for it, cannot refuse to pay it on the ground that it was illegally exacted from the person from whom collected. *Commonwealth* v. *City of Philadelphia,* 27 Pa. 497; *Placer County* v. *Astin,* 8 Cal. 303; *Waters* v. *State,* 1 Gill (Md.), 302; *O'Neal* v. *Board of School Commissioners,* 27 Md. 227; *People* v. *Myers,* 59 Hun. 617 (13 N. Y. Supp. 182) ; *People* v. *Williams,* 3 Thomp. & C. (N. Y.), 338.

It follows from these views that the decree of the court below must be reversed and one entered here dismissing the complaint.

MR. JUSTICE EAKIN dissents in the last point decided.

REVERSED: DISMISSED.