Argued August 6, decided August 13, 1912.

# SPLONSKOFSKY *v.* MINTO, SHERIFF.

[126 Pac. 15.]

PLEADING—CONCLUSIONS.

1. Allegation that school district officers did not direct election notices to be given in the manner provided by law, and did not notify certain districts "in the manner provided by law of the establishment" of a union school district, is insufficient as constituting a mere conclusion of law.

SCHOOLS AND SCHOOL DISTRICTS—UNION HIGH SCHOOL DISTRICTS—BOARD
    OF DIRECTORS—APPOINTMENT.

2. Under Section 4198, L. O. L., which provides that on formation of a union high school district the member of the board of each common school district forming part of the union district who has served the longest since his last election shall be *ex officio* a member of the union high school board, membership of the board is created by operation of the law, and no appointment is necessary.

SCHOOLS AND SCHOOL DISTRICTS—UNION SCHOOL DISTRICTS—CORPORATE
    CHARACTER.

3. Existence of a union high school district, organized under Sections 4192-4210, L. O. L., as a body corporate, is not defeated because of the prior existence of the school districts forming the union district, on the theory that two corporations with like purposes cannot exist in the same territory, since the high school is not concerned with the primary branches taught in common school districts.

SCHOOLS AND SCHOOL DISTRICTS — UNION HIGH SCHOOL DISTRICTS — DE
    FACTO ORGANIZATION—COLLATERAL ATTACK.

4. Where an attempt was made in good faith to organize a union high school district under Sections 4192-4210, L. O. L., and the organization was generally recognized, and a high school was conducted for a term under the charge of the acting board of directors, there was at least a *de facto* corporation, precluding collateral attack upon the organization in a suit brought by taxpayers to enjoin collection of taxes levied by the board.

SCHOOLS AND SCHOOL DISTRICTS—UNION HIGH SCHOOL DISTRICTS—LEVY
    OF TAXES.

5. Under Section 4206, subd. 2, L. O. L., which provides that, on any district which forms a part of a union high school district failing to levy taxes for the maintenance of the union district, the union district board may levy the taxes, and which provides that, on the union district board failing to make the required estimate, the district boundary board shall make it, a taxpayer is not entitled to complain that the proper levy was not made by the high school board, instead of he regular district board.

SCHOOLS AND SCHOOL DISTRICTS—UNION HIGH SCHOOL DISTRICTS—SUIT TO
    ENJOIN COLLECTION OF TAXES—FAILURE OF PROOF.

6. Suit by taxpayers to enjoin collection of taxes levied in a union high school district, organized under Sections 4192-4210, L. O. L., fails

on plaintiffs' failing to prove allegations that they are residents, inhabitants, legal voters, and owners of real and personal property situated in one of the districts which forms a part of the union district.

From Marion:   WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by Paul Splonskofsky, Anton Ettlin, John Bartnik, T. J. Maloy, Matthias Weiber, Kaspar Ettlin, Wm. Wellmann, John Steininger, A. Plas, J. J. Doty, Mrs. E. McCowan, Fritz Weber and Frank Nickerson, to enjoin Harry P. Minto as sheriff and tax collector of Marion County from collecting taxes said to have been levied by high school district No. 1 of said county. It is alleged and admitted: That the defendant is such officer. That school district No. 97 was a regularly organized school district, and hence, under the laws of Oregon, a public corporation; and that about May 17, 1910, petitions were filed with W. M. Smith, superintendent of schools for the county, in form as follows:

"To the District Boundary Board, Marion County,
     Oregon.
"Gentlemen:   We, the undersigned legal voters of school district No. 73, Marion County, Oregon, do hereby petition you to direct the school board of school district No. 73 to state in the notice of the next annual school meeting that the question of uniting Dist. No. 73 and Dist. 116 and Dist. 97 for high school purposes only, thus forming a union high school district, will be submitted to the legal voters.   The site for the union high school shall be at Scott's Mills."

Besides the petition from No. 73, a petition in identical terms, except the proper number designating each district, purporting to come one from the legal voters of school district No. 97, and one from those of school district No. 116, were presented at the same time.   There were 34 names appended to the petition from district No. 73, seven from district No. 97, and five from district No. 116.   This much of the complaint having been admitted,

the remainder of that pleading is, in substance, as follows:

"Plaintiffs aver that at all the dates and times stated, and for a long time prior thereto and ever since, they have been and now are residents, inhabitants, and legal voters of and within public school district No. 97, and that each of them was and now is the owner of real and personal property situated within said school district."

After setting out in full in the complaint the three petitions already mentioned, the complaint contains these allegations:

"That the said district boundary board never directed in writing or otherwise that the school boards of the said respective school districts, or any of them, give the notices as requested in said alleged petition as required by Section 3 of said Chapter 101 of the Session Laws of the State of Oregon for the year 1907. That the district boundary board of Marion County, Oregon, never notified the respective school boards of districts No. 73, No. 97, and No. 116 of its determination in favor of uniting such districts for high school purposes, as required by Section 3 of an act to provide for the establishment of union high school districts, and for the maintenance and government of the same, and to define the powers thereof, being Chapter 101 of the Session Laws of Oregon for the year 1907."

Plaintiffs state that the district boundary board never made any appointment of directors for the alleged high school district; that on August 28, 1910, one J. E. Coulson and one Paul Splonskofsky, at the farm of Wm. McKillop, attempted to organize the pretended union high school district No. 1, and attempted and pretended to elect one J. E. Coulson as chairman and W. F. Drager as clerk, and made a pretended order that notices calling a special meeting of the voters be posted up for the purpose of voting a special tax for conducting the high school during the ensuing year, and on December 27, 1910, at Scott's Mills, said J. E. Coulson, pretending to be chair-

man of the alleged union high school district No. 1, in accordance with a pretended notice posted, attempted to call an alleged special meeting to order at the schoolhouse at Scott's Mills, in Marion County, Oregon, at 3 o'clock p. m. The pretended chairman read the pretended notices, stating the object of the meeting. The said pretended union high school board pretended to estimate a levy of four mills on all the taxable property embraced in the alleged union high school district to be necessary to carry on the school for the ensuing year. By an attempted and pretended ballot, it was decided that an alleged and pretended tax of four mills be levied on the property of the said pretended union high school district; there being 22 alleged votes favoring the pretended tax, and two alleged votes against said pretended tax.

With a liberal admixture of the terms "pretended" and "alleged," the complaint further states, in substance, that the union high school board of district No. 1 ordered a levy of four mills special tax of the taxable property of each regular school district included in the district that should fail to make such a levy by December 10, 1910. Premising that it does not appear that the districts in question were districts of the third class, or that one-third of the legal voters of each of them signed the petitions, the complaint specifies sundry objections to the petitioners who signed the petitions from district No. 97, alleging that they were not legal voters or qualified to sign the petition, contending that there were only four qualified school voters who signed that petition, and that they constituted less than one-third of the electors of the district. The plaintiffs aver that district No. 97 never made any assessment or levy for the union high school district taxes, and that the board never gave that district any notice of such an estimate, but, on the contrary, made the estimate and levy of four mills on the

assessable property in the union high school district itself, reported the same to the county clerk, who in turn extended it on the tax roll and placed the same in the hands of the sheriff, who is now in process of collecting all the taxes assessed against property in Marion County. Contending that the levy of four mills on the dollar mentioned is a cloud upon the titles of their respective lands, and that it is illegal and void, they pray for a decree perpetually enjoining the defendant from attempting to collect the same, or any part thereof.

Aside from the admitted matter already mentioned, the answer denies the whole complaint. It further alleges that the districts in question were districts of the third class; that petitions containing not less than one-third of the legal voters thereof were presented from each of the districts to the district boundary board, which directed the school boards of the several districts to give the notices requested in said petition; that said notices were so given by posting them in three public places in each of said districts ten days before the day appointed for the school meeting at which a vote was to be taken; that at those meetings the election was regularly held, resulting in a majority in each of said districts in favor of a union high school; that within ten days after the returns were received from the districts in question the district boundary board canvassed the vote and declared the territory comprising said districts to be a union high school district. Pleading the provision of the statute that after a union high school is formed by uniting three or more districts of the third class the member of each of the boards of directors of the districts who has served longest since his last election shall be *ex officio* a member of the union high school board, the defendant alleges that the board met and organized by electing one of their number chairman, and appointed a clerk from among the other voters

of the high school district; that after its organization the union high school board made an estimate of the amount of funds necessary to support a school, reported its determination to the county clerk, and notified the boards of each of the school districts of its portion of the expense; that, owing to an inadvertence, district No. 97 failed to make an assessment or levy for the taxes in question, whereupon the high school board itself made a levy of a tax of four mills on each dollar of the taxable property of said school district; and that districts No. 73 and 116 accordingly made the levy of four mills on the taxable property in their several districts.

The reply denied all the allegations of the answer, except as stated in the complaint. After a hearing in the circuit court, a decree of permanent injunction was rendered by that court according to the prayer of the complaint. From this decree, the appellant has appealed.

REVERSED: DECREE RENDERED.

For appellant there was a brief over the names of *Mr. John H. McNary, Mr. Charles L. McNary,* and *Mr. Walter C. Winslow,* with an oral argument by *Mr. Winslow.*

For respondents there was a brief with oral arguments by *Mr. Myron E. Pogue,* and *Mr. Woodson T. Slater.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The statute relating to union high schools is found in Sections 4192 to 4210, inclusive, L. O. L. It was stipulated at the hearing that the three districts mentioned are all districts of the third class; each having less than 200 children of school age within its boundaries. To initiate a scheme for a union high school composed of districts of the third class, it is required that a petition, signed by no less than one-third of the legal voters of

each district, shall be addressed to the district boundary board, requesting that board to require the school boards of each of the districts to state in the notice for the next annual school meeting or election that the question of uniting the districts for high school purposes only will be submitted. The district boundary board is required to direct the school board to give the notices as requested in the petition, and the form of ballot is prescribed: "For Union High School—Yes and No." Provision is made for the returns of the election to the district boundary board, which canvasses the result; and, if it finds that a majority of all votes cast on the high school subject in each district voting thereon is in favor of uniting the districts for high school purposes, it shall immediately notify the respective school boards concerned of the result, and shall declare the territory comprising such district to be a union high school district, giving it a number in the order of their formation in the county. Section 4194, L. O. L.

1. It is said in the complaint, in substance, that the district boundary board did not direct the notices to be given of the election in the manner provided by law, and did not notify the respective districts in the manner provided by law of the establishment of the union high school district. These allegations, already quoted in the statement of the case, are not sufficient to call upon the defendant to make his defense in that respect. To say that the matter was done or not done in accordance with the provisions of the law is only stating a conclusion, and not a fact. It is better to state the facts and allow the court to draw the conclusions sought.

2. It appears in evidence that an election was actually held in each of the districts, and that the majority of all the votes cast in each district was in favor of the project of a union high school district. It appears, also, that

the district boundary board declared the three districts to be union high school district No. 1. By Section 4198, L. O. L., it is provided that, if the union high school district is formed by three or more districts of the third class, the member of each of such boards who has served longest since his last election shall be *ex officio* a member of the union high school board. Such are the men in this instance who organized and acted as members of the high school board. Thus it is that in the organization of high school districts out of three districts of the third class the board of directors of the new organization is created by operation of law, and an appointment is not necessary for its existence.

3. The duties of a union high school board are thus prescribed in Section 4206, subd. 2, L. O. L.:

"They shall prepare annually an estimate of the amount of funds necessary to carry out the purposes for which the union high school district was established, and shall notify the board of each school district of its proportion of such expense not later than thirty days before the date on which a district must report its tax levy to the county clerks. The basis for estimating the proportion of expense each district shall pay shall be the assessed valuation for the school district for the current year. School districts forming a part of a union high school district shall, not oftener than once a year, levy a sufficient tax, not to exceed ten mills on the taxable value of the respective districts, to meet the *pro rata* share of expense apportioned to it by the union high school board, and should any district fail to levy such tax the high school board is hereby authorized to levy such tax on such district. Should the union high school board in any high school district fail to make the estimate provided for in this section, it shall be the duty of the district boundary board to make such estimate. * * *"

By other paragraphs of the same section, when authorized by a majority vote of the legal voters present at any legally called school meeting in a union high school

district, the board may contract a debt on behalf of the district by borrowing money or otherwise, and issue negotiable, interest-bearing warrants and levy a tax on the taxable property of the district to pay interest, and may, when legally authorized, secure land and cause to be erected thereon a suitable building. After various other provisions, not necessary to mention, the chapter on high school ends with Section 4210, as follows:

"All laws governing regular school districts and officers shall apply to union high school districts and officers so far as applicable."

Relating to regular school districts, Section 4026, L. O. L., reads thus:

"All school districts now existing or that shall be organized in pursuance of this act shall be to all intents and purposes bodies corporate, competent to transact all business coming under their jurisdiction, and sue and be sued. * * *"

Taking all these statutory provisions together, it is manifest that, for all the purposes of the statutes quoted, a union high school district is a body corporate. The plaintiffs argue that it is impossible for two corporations with like purposes to exist in the same territory. This principle, sound as it may be, does not apply to the present contention. The high school is not concerned with the primary branches of education taught in the common schools. Its field of activity is enlarged and different in scope from that of the ordinary districts. With the design of promoting advanced education, the legislative power has provided for an organization upon which it has conferred the characteristics of the ordinary body corporate engaged in similar undertakings. The two classes of districts complement one another, but do not conflict in their organization. In that they are all branches of the government, we might as well say that

road districts, school districts, and drainage districts conflict with each other, because they operate in the same territory.

4. In *Yamhill County* v. *Foster,* 53 Or. 124 (99 Pac. 286), this court laid down the principle that "it is a general rule that a court of equity will not interfere to restrain the collection of public revenue for mere illegality or irregularity in the proceeding; but its jurisdiction is confined to cases where the tax itself is not authorized by law, or is assessed on property not subject to taxation, or the persons exacting it are without authority in the premises, or have proceeded fraudulently, or some other ground of equitable interference is shown." We have quoted the statute authorizing such a tax as the one now in question, and it is made assessable on property within the respective school districts. It is not pretended in the complaint that the defendant or any of the school officers acted fraudulently. Under the rule laid down, the question, then, is reduced to this: Whether or not the persons exacting the tax are without authority in the premises. The grievance of the plaintiffs centers in the contention that the high school district is not properly organized, so as to empower it to levy the taxes in question. Judge Thompson, writing in 10 Cyc. 252, says:

"A corporation *de jure* is said to be one whose right to exercise a corporate function would prove invulnerable if assailed by the State in a *quo warranto* proceeding. * * A corporation *de facto* exists when there is (1) a charter or statute under which a corporation with the powers assumed might have been organized; (2) a *bona fide* attempt to organize a corporation under such a charter or statute; (3) an actual user of the corporate powers, or some of them, which might have been rightfully used by such an organization. Such being the proper conception of a corporation *de facto,* it follows that a substantial compliance with the law in effecting

a corporate organization is not necessary to constitute the body a corporation *de facto,* because that makes it a corporation *de jure.*"

In addition to what has already been said, we learn from the testimony that the high school was in actual operation for a term of eight months in the high school district in question under charge of the board of directors, upon whom this duty was cast by operation of law, as we have already seen. Thus are present all the elements laid down in the rule by Judge Thompson constituting a *de facto* corporation.

In *Umatilla Water Users' Association* v. *Irvin,* 56 Or. 414 (108 Pac. 1016), this court, speaking through Justice McBRIDE, says: "In order to secure the peaceful and orderly government of the community, the rule has been established that the right of a *de facto* public officer to exercise the powers of his office cannot be investigated in a collateral proceeding. It must be determined once for all time in a direct proceeding to oust the officer."

In *Hamilton* v. *San Diego County,* 108 Cal. 273 (41 Pac. 305), it is stated: "Where a board of supervisors, believing that certain territory within the limits of a city is outside of such limits, forms a school district out of the same, and the trustees appointed exercise the powers of school trustees, and taxes are levied for the district, and on an election, by voters of the district, bonds are issued to buy land and build a schoolhouse, one who paid taxes so levied cannot recover the same out of funds in the hands of the county treasurer to the credit of the district, on the ground that the board of supervisors had no authority to organize the district, as the district had at least a *de facto* existence."

The following authorities illustrate the principle that, unless challenged by a direct proceeding, the acts of a

*de facto* corporation cannot be attacked collaterally by injunction: *Trumbo* v. *People,* 75 Ill. 561; *Munson* v. *Miner,* 22 Ill. 594; *Samuels* v. *Drainage Com'n,* 125 Ill. 536 (17 N. E. 829) ; *People* v. *Knopf,* 183 Ill. 410 (56 N. E. 155) ; *Rosell* v. *Board of Education,* 68 N. J. Law, 498 (53 Atl. 398) ; *Hoey* v. *Collector,* 39 N. J. Law, 75; *Sudbury* v. *Heard,* 103 Mass. 543; *Koontz* v. *Hancock,* 64 Md. 134 (20 Atl. 1039). Many authorities on this question are collected in the note to *Holland* v. *Mayor of Baltimore,* 11 Md. 186 (69 Am. Dec. 199).

The precedents cited by the plaintiffs in support of their contention are, almost without exception, either *quo warranto* cases or *in certiorari* to review the attempted formation of the corporation involved. These are both direct attacks upon the validity of the organization, while the present litigation is clearly a collateral onslaught. They also cite a few cases where the attempt was made to set up a corporation under a plainly unconstitutional statute, and it was held that the proceeding was void on its face, and hence open to collateral attack. Here, however, the statute is not assailed on constitutional grounds or oherwise, so that the latter mentioned citations are not controlling in the present instance.

Section 366, L. O. L., provides that "an action at law may be maintained in the name of the State upon the information of the prosecuting attorney or upon the relation of a private party against a person offending, in the following cases: (1). When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this State, or any office in a corporation, either public or private, created or formed by or under the authority of this State, or * * (3) When any association or number of persons act within this State as a corporation without being duly incorporated."

It is said in Section 369, L. O. L., that "* * in all other actions provided for in this chapter it shall be the duty of the proper prosecuting attorney to commence such action upon leave given, where leave is required, in every case of public interest, whenever he has reason to believe that a cause of action exists and can be proven, and also for like reasons in every case of private interest only in which satisfactory security is given to the State to indemnify it against the costs and expenses that may be incurred thereby."

Without any showing of an attempt to commence an action, or that the district attorney has refused to countenance such a proceeding, we cannot justify the plaintiffs in ignoring this remedy at law and seeking the aid of government by injunction, especially since it appears in the testimony that many of these plaintiffs participated in the formation of the corporation by attending the election and voting at the same, and that one of them was a member of and participated in the organization of the union high school board.

5. Referring to the allegations of the complaint, we find it there alleged "that at a pretended meeting of the pretended union high school board of district No. 1, it was attempted to be called to order by the alleged chairman, J. E. Coulson, and it was attempted to be ordered that the alleged high school board of said pretended union high school district No. 1 levy the said pretended required four-mill special tax on the taxable property of each regular school district included in the said pretended high school district that should fail to make such pretended levy by December 10, 1910." A review of the proceedings has shown that there exists a statute under which such corporation might have been organized. It also appears that there was a *bona fide* attempt to organize a corporation under such a statute, and that there

has been an actual user of the corporate powers which rightfully might be exercised by such an organization, in that it has maintained a school for at least eight months. Enough is shown, therefore, to constitute a *de facto* corporation, so that the pretense mentioned in the excerpt from the complaint, above quoted, becomes a reality, with the result that with this amendment the allegation is to the effect that the board itself resolved to levy the four mills special school tax, unless the regular school district should make the levy by December 10, 1910.

It is objected that the high school board had no right to make the levy in the first instance, and that no showing has been made that the regular board of district No. 97 was notified that such a levy would be required. To the union high school board, in the first instance, is committed the power to annually estimate the amount of funds necessary to carry out the purposes of the organization, and this must be calculated upon the assessed valuation of the school district for the current year. The regular school district is required to levy a sufficient tax, not to exceed ten mills per dollar, on the taxable value of the respective districts to meet this *pro rata* share thus apportioned to it by the union high school board, with the condition that, should it fail to levy such tax, the high school board itself shall levy the tax, and in default of action of both of them the district boundary board is entitled to make the estimate. When the requisition is thus made by the high school board, it is the duty of the regular district to make the necessary levy; the only limit on the power being the ten-mill maximum per annum mentioned in the statute. A fair and practical construction of this statute is to the effect that there are three sources from which a levy of the kind may come, each with concurrent jurisdiction to make the same, viz.,

the regular district board, the high school board, and the district boundary board. It is not pretended that district No. 97 made the required levy. It can make no difference to plaintiffs whether the levy is made by the high school board or the regular district board. The latter cannot lawfully do less or more than what is required of it by the high school board within the ten-mill limit. The demand upon the individual taxpayer would be the same in amount, whether it came from either of the three sources above mentioned.

6. Besides all this, the plaintiffs, qualifying themselves to commence this suit, allege, in substance, that they are residents, inhabitants, and legal voters within district No. 97, and have real and personal property situate therein. This allegation is denied. Conceding that this states grounds authorizing them to prosecute the suit, it has utterly failed of proof, because there is no testimony whatever on that subject. Although they may have alleged sufficient to qualify them as parties plaintiff, they have utterly failed to prove the same; and hence upon this, if upon no other grounds, their suit should fail.

Upon the whole case, we are of the opinion that the plaintiffs have not shown a cause of suit; and hence the decree of the court below must be reversed, and one here entered, dismissing the complaint.

REVERSED: SUIT DISMISSED.