Argued May 3, submitted on brief for respondent, affirmed June 28, 1921.

## REES v. VALLEY VIEW DRAINAGE DISTRICT
### ET AL.
#### (199 Pac. 178.)

**Drains—Determination in Hearing on Petition for District Held not Subject to Collateral Attack—"Adjudication."**

1. Decision of County Court on petition for establishment of a drainage district is an adjudication, and facts involved in the hearing cannot be inquired into in a collateral proceeding under Sections 7247–7280, Or. L.

**Drains—Petitioner for Establishment of District cannot Complain of Establishment by Reason of Improper Signatures of Uncomplaining Property Owners.**

2. A petitioner for establishment of a drainage district, under Sections 7247–7280, Or. L., cannot maintain that no district was established by reason of the insufficiency of signatures of other petitioners to the petition, where none of such property owners have complained, being estopped to object to the sufficiency of the petition after the County Court adjudicated the very facts on which he is seeking to readjudicate.

**Drains—Persons Signing Petition Bound to Take Notice of Statute, Contemplating That County Court shall Exclude Acreage not Properly Belonging.**

3. One signing a petition for establishment of a drainage district, under Sections 7247–7280, Or. L., is bound to take notice of the section which contemplates that the County Court shall exclude all acreage not properly belonging to the proposed drainage district, and cannot complain of the establishment of the district, in that he signed with the understanding that certain land excluded by the County Court was to be included therein.

From Malheur: DALTON BIGGS, Judge.

In Banc.

This is a suit brought by W. S. Rees against the Valley View Drainage District, alleged by the plaintiff to be "a pretended corporation" and against C. E. Ingraham, G. W. Dean and B. B. Wood acting as supervisors, and against B. B. Wood as secretary

---

1. Collateral attack on organization of drainage district, see note in Ann. Cas. 1915C, 26, 40.

of such district. The purpose of the plaintiff, as avowed by him in his complaint, is if possible to secure a decree enjoining the defendants from levying or collecting taxes or selling bonds or doing any other act which may charge the land of the plaintiff with any burden. The plaintiff alleges that the district was not legally organized and he also asks for a decree declaring the invalidity of the organization of the district. It is the theory of the plaintiff that the petition for the organization of the drainage district was not signed by persons owning 50 per cent of the acreage within the proposed district, and that therefore the County Court was without jurisdiction. The defendants 'not only deny that the County Court was without jurisdiction but they also allege: (1) That the question sought to be raised by the plaintiff was decided by the County Court and is *res adjudicata;* and (2) that the plaintiff is estopped to challenge the validity of the organization of the drainage district for the reason that he was one of the petitioners asking for the formation of the district.

There is practically no dispute about the facts; for nearly all of the material facts are admitted. Possibly a clearer understanding of the controversy may be gained if we postpone further notice of the pleadings filed in this suit until we shall have first given an account of the record made in the County Court and made a statement of some additional facts.

On July 7, 1919, a petition was filed in the County Court asking for the organization of a drainage district to be known as the Valley View Drainage District. This petition contained the signature of C. E. Ingraham and eleven other signatures, and for convenience the petition for the organization of the district will be referred to as the Ingraham petition. The boundaries of the proposed district embraced

1,542.75 acres. The petition was personally signed by eight owners, including the plaintiff; and it purported to be signed by four other owners by their respective agents. There was no dispute in the County Court nor is there any in this court about the signatures of the eight owners who personally signed the petition; but the validity of the remaining four signatures was questioned in the County Court and is challenged in this court. The twelve signatures represented a total of 850.25 acres or more than 50 per cent of the acreage within the proposed district. The four controverted signatures and the respective acreage represented by them appear on the petition thus:

"G. W. Dean, agent for Katherine Beck Irvine," 160 acres; "W. C. Tensen, by D. Tensen, agent," 59 acres; "Albert Neuhoys, by D. Tensen, agent," 100 acres; "C. E. S. Wood, by B. B. Wood, 160, under Chas. Altschul," 160 acres.

The district as proposed in the petition was bounded on the east by what is called the Wilson Ditch and on the west by a canal known as the Shoestring Ditch. Running north and south through the proposed ditch is a ditch called the Owyhee Ditch. The Shoe string and Owyhee Ditches are practically parallel with each other; and between these two ditches is approximately one fourth of the area embraced within the district as it was originally proposed in the petition.

Upon the filing of the Ingraham petition, the County Court ordered that August 4, 1919, be fixed as the time for hearing the petition and any objections that might be filed. Notice was duly published.

Mary J. Hallock filed a paper objecting to the formation of the drainage district and moving for the dismissal of the Ingraham petition. Among other

reasons assigned by her for the dismissal of the Ingraham petition, Mary J. Hallock averred, in her motion to dismiss, that the Ingraham petition "is not signed by 50 per cent of the legal owners of land within the boundaries of" the proposed district; that the name of Katherine Beck Irvine is signed to the petition by G. W. Dean "calling himself agent but not showing any legal authority for such signature"; that the name of W. C. Tensen is signed "by D. Tensen, agent, and no legal authority shown for such signing"; that Albert Neuhoys, whose name is signed by D. Tensen, died long prior to the signing and filing of the petition and—

"the said land is the property of the heirs of said Neuhoys and no administrator or executor has been named * * and it is not shown that said D. Tensen had authority to sign said petition"; that the name of C. E. S. Wood is signed by B. B. Wood "without showing any authority and claiming to represent 160 acres of land within said proposed district, owned by one Charles Altschul. No authority is shown for such signature and the legal owner of said 160 acres, or his signature, does not appear upon said petition."

Mary J. Hallock filed a second paper; but it was merely a protest against the inclusion of her land in the district, and it concluded with a prayer that an order be made excluding her land from the district. In addition to filing the motion to dismiss the Ingraham petition and the protest asking that her land be excluded from the district, Mary J. Hallock also joined with H. H. Whitney and others in the petition asking for the exclusion of their several lands.

On August 4, 1919, H. H. Whitney, W. H. McEldowney, D. T. Downs, Anson Van Readen, the Oregon & Western Colonization Company, Countryman, Whitney & Henderson, Morton Barrows and Mary

J. Hallock joined in and filed a petition asking that their lands, the greater portion of which lies west of the Owyhee Ditch, be excluded from the district in the event a district should be organized. For convenience this paper will be designated the Whitney petition. In the Whitney petition the petitioners alleged that their lands "or the greater portion thereof" were west of the Owyhee Ditch and

"are watered and irrigated from the Shoestring Ditch * * are high, dry and well drained and have ample means and rights for disposing of all waste and surface water without conveying the same on to or over the lands below the Owyhee Ditch."

Under date of August 4, 1919, the County Court caused an entry to be made in its journal reciting that "this cause" came on to be heard on the Ingraham petition—

"and it appearing to the court that Mary J. Hallock has filed a motion to dismiss said petition, * * and the said Mary J. Hallock having set up in her motion to dismiss that the said petition is not signed by the owners of the land * * and the court having heard the evidence of some of the witnesses for the petition and it further appearing to the court that one of the principal witnesses is absent, and by consent this cause is continued until August 20, 1919."

The records show that on August 20, 1919, one order was made with reference to the Whitney petition and the Mary J. Hallock protest; and separate findings of fact, conclusions of law and an order were made with reference to the Ingraham petition and the Mary J. Hallock motion to dismiss. The order made concerning the Whitney petition shows that the Whitney petitioners "appearing in person and by their attorney William E. Lees," and the Ingraham petitioners "appearing in person and by their attorney W. W. Wood" all parties including the Ingraham

petitioners and their attorney agreed to a compromise whereby all the lands west of the Owyhee Ditch should be excluded from the district and the Whitney petitioners "would proceed no further with their petition to dismiss the petition for the creation of" the district; and accordingly the County Court ordered that all the land west of the Owyhee Ditch be excluded from the district.

The findings of fact concerning the Ingraham petition and the Hallock motion to dismiss or objections are prefaced with a recital that Ingraham and "ten other petitioners" appeared in person and by their attorney and that the objections of Mary J. Hallock and the persons who signed the Whitney petition appeared in person and by their attorney, and that "sworn testimony was taken and heard for and against the said petition and the said objections" and that the court heard arguments of counsel for and against the said petition and the objections. Among the findings of fact is one—

"that the signers of said petition are the owners as shown by the records of the county of more than 50 per cent of the acreage of land within the boundaries of the proposed district."

The County Court overruled the objections of Mary J. Hallock and made an order establishing the drainage district with the Wilson Ditch forming the east boundary and the Owyhee Ditch marking the west boundary of the district.

No appeal was taken from the order of the County Court creating the district.

No stenographic record of the evidence received in the County Court was made and for that reason no attempt was made to ascertain who were the witnesses in the County Court or what was the nature of the testimony. However, the record made in the

County Court affirmatively shows that evidence was heard; and, moreover, in the instant case witnesses testified that evidence was received and considered in the County Court when the County Court heard the objections to the Ingraham petition.

In substance the complaint alleges that the persons named as defendants are claiming to act as the officers of the Valley View Drainage District, a pretended corporation, and that unless enjoined they will levy taxes and assessments for organization and maintenance expenses and will issue bonds and thus impose charges upon the land of the plaintiff. It is averred in the complaint that the names of the four specified owners were signed without authority. If the acreage represented by any one of these four names is deducted then it will be found that the Ingraham petition includes less than 50 per cent of the acreage within the proposed district. The plaintiff avers that the acreage represented by the four names must be deducted and that therefore the County Court was without jurisdiction and its order establishing the district was void.

The complaint also declares that B. B. Wood is not a land owner and for that reason he is not qualified to act as a supervisor. This feature of the complaint will not be noticed further, because the plaintiff offered no evidence tending to sustain the allegation.

In addition to admissions and denials, the answer contains two affirmative defenses. In the first defense the defendant recites at length the successive steps taken towards the organization of the district, beginning with the filing of the petition and culminating with the order of August 20, 1919, organizing the district. The defendants aver that the objections and motion made against the Ingraham petition pre-

sented for decision by the County Court the same questions that are attempted to be presented to this court for decision, and that since the County Court decided these questions adversely to the position taken by the plaintiff the decision of the County Court must be treated as *res adjudicata* and as a final determination.

In substance the second affirmative defense is based upon the theory that the plaintiff is estopped from questioning the transactions in the County Court, for the reason that he was one of the petitioners who signed the petition for the formation of the drainage district and "instrumental in procuring the very judgment and proceedings to which he complains."

The reply consisted of a general denial.

AFFIRMED.

For appellant there was a brief over the names of *Mr. W. E. Lees* and *Messrs. Davis & Kester,* with an oral argument by *Mr. Lees.*

For respondent there was a brief over the name of *Mr. W. W. Wood.*

HARRIS, J.—The proceedings for the organization of the drainage district were conducted in conformity with Chapter 340, Laws of 1915, and amendatory acts which have been since codified as Sections 7247 to 7280, Or. L. There is no controversy about the legality of any step taken towards the formation of the district, except the sufficiency of the four disputed signatures attached to the petition for organization. Section 7247, Or. L., provides that the owners of 50 per cent of the acreage in any contiguous body of certain kinds of lands may prepare and sign a peti-

tion which shall contain ten specified statements and a prayer—

"asking that the lands described, or such of them as may be found by the court to be properly included in the proposed district, either permanently or until further investigation and surveys may permit elimination, shall be declared organized into a drainage district."

The plaintiff contends and we shall assume that the petition is jurisdictional, and that therefore a petition not representing 50 per cent of the acreage does not confer jurisdiction to create a district.

The petition must be verified by one or more of the petitioners and filed in the office of the county clerk, and the County Court then fixes the time and place for the hearing of the petition. The county clerk causes a notice to be published in a newspaper: Section 7248, Or. L.

It is provided by the terms of Section 7249, Or. L., that—

"On or before the date set for the hearing, any person objecting to the organization and incorporation of said district may appear and file in writing his objection thereto, which objection shall set forth specifically and definitely his objections thereto.

"At the hearing the court shall hear and consider any evidence that may be presented for or against the petition or any objection thereto.

"Thereupon the court shall make its findings upon the facts alleged in the petition or objections and any other facts necessary and proper for the determination of the propriety of the organization of such district, which findings shall be entered on the journal of the court.

"If it should appear to the court that the prayers of the petition should be granted, the court shall, by its order duly entered of record, declare and decree said drainage district organized. * *.

"In making such findings and decree, the court shall disregard any error, irregularity or omission which does not affect substantial rights, and no error, irregularity or omission which does not affect substantial rights shall affect the validity of the organization or any proceedings taken thereon.

"Appeal may be taken from the decision of said court to the Circuit Court in the same manner as appeals are taken in equity cases as by law provided. * * *"

From these sections of the Code it appears that opportunity is given for the filing of objections, and that when objections are filed the County Court is empowered to hear and consider any evidence that may be presented for or against the petition or any objections thereto. The County Court is not only empowered to hear and consider but it is also empowered to decide; and therefore when it does hear and consider and decide its decision becomes an adjudication. The petition is analogous to a complaint and the objections are analogous to an answer in a suit in equity or an action at law; and these pleadings raise an issue: *Hanley Co.* v. *Harney Valley Irr. District,* 93 Or. 78, 91 (180 Pac. 724, 182 Pac. 559). The identical issues raised in the instant suit were raised, heard, considered and decided in the County Court. The Whitney petition was not strictly speaking an objection to the formation of the drainage district; for the signers of that petition did no more than merely to ask that the lands of the petitioners be excluded. One of the two papers filed by Mary J. Hallock was merely a protest against the inclusion of her lands within the district; but the other paper filed by her was an objection to the formation of any district, and among other reasons she assigned as reasons for her objections the same reasons which are now assigned

by Rees in support of his claim that the Ingraham petition was not properly signed by the required number of owners. Although it appears from the record made in the County Court that the parties stipulated that the lands west of the Owyhee Ditch should be excluded, it does affirmatively appear that evidence was in truth heard with reference to the controversy about the four disputed signatures and the County Court decided that "the motion of Mary J. Hallock to dismiss the petition should be overruled and denied," and the County Court further held that the Ingraham petition was sufficient.

1. The plaintiff says that this suit is a direct attack, while the defendants argue that it is a collateral attack. It will not be necessary to attempt to inquire whether this suit is a direct or a collateral attack upon the organization of the district, although prior precedents apparently furnish substantial support for the contention that the instant suit is a collateral attack: *Tyree* v. *Crystal District Improvement Co.,* 64 Or. 251, 253 (126 Pac. 605); *Splonskofsky* v. *Minto,* 62 Or. 560, 571 (126 Pac. 15). If this is a collateral attack, then the plaintiff cannot in this suit question the order organizing the district, for the finding of the County Court constituted an adjudication of fact which cannot be inquired into in a collateral proceeding: *Oliver* v. *Monona Co.,* 117 Iowa, 43, 48 (90 N. W. 510); *People* v. *Reclamation District No. 136,* 121 Cal. 522 (50 Pac. 1068, 53 Pac. 1085); 23 Cyc. 1088. But as previously stated we do not attempt to decide whether the instant suit is a direct or collateral attack, for in our view the plaintiff is in no position to maintain this suit.

2, 3. The plaintiff was one of the petitioners and as such was responsible for the initiation of the proceed-

ing which upon his petition culminated in an order for which he then prayed and against which he now inveighs. Not one of the four owners has complained about the validity of the organization of the district; and the plaintiff cannot complain for them, for he is one of the petitioners upon whose prayer the County Court granted the very order for which he prayed, and therefore he is now estopped to object to the sufficiency of the petition after the County Court adjudicated the very facts which the plaintiff is seeking to readjudicate here. It must be remembered that this is a suit in equity, and it must be also remembered that the statute which permits the organization of drainage districts contains provisions for a contest and a hearing and a decision of the issues raised by the contest. But the plaintiff says that he signed the petition with the understanding and upon the condition that the district would include all the lands west of the Owyhee Ditch and that he did not have any knowledge of the exclusion of these lands until after the entry of the order organizing the district. The answer to this statement is that the statute contemplates that only such of the lands described in the petition as properly should be included in a drainage district shall be embraced in the order of organization. The County Court is empowered to create a district out of the lands described in the petition "or such of them as may be found by the court to be properly included in the proposed district"; and, moreover, the prayer of the petition signed by the plaintiff is—

"that the lands described in said petition, or so much of them as shall be found by the court to be properly included shall be within said district as organized. * * "

In addition to finding that the parties agreed that the lands west of the Owyhee Ditch should be excluded, the County Court found from the evidence that the lands of the objectors and all other lands lying west of the Owyhee Ditch—

"are high and dry lands, and are not wet, swamp or overflowed lands, and do not injure the lands of the petitioners; and the same should not be included within the proposed drainage district."

Based upon the findings just mentioned the County Court decreed

"that the lands described in the petition and lying west of the Owyee Ditch should be excluded from the said drainage district."

The plaintiff was bound to take notice of the statute which contemplates that the County Court shall exclude all acreage not properly belonging to the proposed drainage district and that no acreage shall be included in the order of organization except such acreage as properly belongs to the drainage district. Furthermore, in the petition signed by him the plaintiff expressly asks the County Court to create a drainage district out of "such of" the lands as the court might find to be properly included; and therefore the order actually made was strictly in conformity with the prayer of the plaintiff and the other petitioners.

A court of equity will decline to raise a restraining hand in a suit for an injunction brought by a person who stands in a position like the one occupied by the plaintiff. Fraud is not charged; nor is there any claim of fraud. Every act was done in good faith. The plaintiff is estopped to question the validity of the petition for the reason that he was in part responsible for the creation of the drainage district; and

hence it is immaterial whether this suit is treated as a direct or as a collateral attack upon the order of the County Court organizing the district: *Carr* v. *Boone,* 108 Ind. 241 (9 N. E. 110); *State ex rel.* v. *Taylor,* 224 Mo. 393 (123 S. W. 892); *Hackett* v. *State,* 113 Ind. 532 (15 N. E. 799); *Oliver* v. *Monona Co.,* 117 Iowa, 43 (90 N. W. 510); *Northern P. R. Co.* v. *Pierce Co.,* 51 Wash. 12 (97 Pac. 1099, 23 L. R. A. (N. S.) 286); *People ex rel.* v. *Seaman,* 239 Ill. 611 (88 N. E. 212); note in 60 L. R. A. 247. See, also, *Splonskofsky* v. *Minto,* 62 Or. 560, 572 (126 Pac. 15); *Hackett* v. *Brown,* 128 Mich. 141 (87 N. W. 102).

The decree of the Circuit Court dismissing the suit is affirmed.                    AFFIRMED.

BENSON, J., not sitting.